### GILLESPIE v. LOUISIANA LONG LEAF LUMBER CO.

No. 5733.

Court of Appeal of Louisiana.
Second Circuit.
June 30, 1938.

Rehearing Denied Nov. 4, 1938.

Writ of Certiorari and Review Denied
Dec. 9, 1938.

Edwin M. Fraser and J. R. Boone, both of Many, and D. H. Perkins, of Shreveport, (in Appellate Court only), for appellant.

J. S. Pickett, of Many, for appellee.

DREW, Judge.

This is a suit for damages arising out of an automobile accident. On July 6, 1936, the plaintiff, Miss Katherine Gillespie, was invited to drive with Mr. C. H. King and his little three-year-old daughter from Oakdale, Louisiana, to Haslam, Texas. As the car in which they were driving came into Many, Louisiana, from the south, traveling in a northern direction on highway No. 42, it entered a sharp right angle curve from the highway into Alabama Avenue at about 6 o'clock in the afternoon. As the car entered this curve, a large truck driven by the employee of the defendant company was traveling south around the curve, meeting the car in which plaintiff was riding, this truck having attached to it a trailer 20 feet long, which was loaded with long logs some 32 feet long. A collision between the trailer of this truck and the car in which plaintiff was riding took place in this curve, from which collision resulted the injuries to plaintiff which are the basis of this suit.

Defendant pleads a general denial, coupled with a defense of contributory negligence and joint adventure; and upon these issues the case went to trial in the lower court, resulting in a judgment rejecting the demands of plaintiff. From this judgment, plaintiff has appealed.

Although no photographs of the scene of the accident are in evidence, the testimony shows a very clear picture of the road and physical surroundings of the scene where the accident took place. From the undisputed testimony in the record, we find that the curve upon which this accident took place is a very sharp one, being a right angle curve, and that the slab of concrete around this curve is 18 feet wide, with a black line in the center of this concrete slab, and that the outer part of the curve has an asphalt shoulder measuring 34 feet from the black line in the center of the road to the extreme left or west shoulder of the curve, while the distance on the inside of the curve from the black line in the center of the road to the east edge of the concrete slab, measures only 9 feet. At the

time of the accident, the east edge of the concrete on this curve was from 5 to 6 inches above the shoulder of the road. Therefore, the truck which was heading south around this curve had a passageway of 34 feet from the black line in the center of the curve to the extreme west edge of the asphalt shoulder of this curve, while the car in which plaintiff was riding, heading north around this curve, had a passageway of only 9 feet from the black line in the center of the road to the east edge of the concrete slab, this east edge of the concrete slab being about 5 or 6 inches higher than the shoulder itself and the shoulder being full of holes.

The car in which plaintiff was riding was traveling north and entered the curve approximately the same time as did the truck, which was traveling south. The truck itself safely passed the car in which plaintiff was riding, but the trailer attached to the truck cut the corner and came across the black line to the east side of it, a distance of about 2 feet, causing the left rear wheel of the trailer to strike the left front wheel of the car in which plaintiff was riding, dragging it back and pushing the back wheels of the car off the paved part of the road on the east side. The windshield and headlights of the car were broken. Plaintiff was thrown into the windshield, receiving cuts and bruises about the face and head. The broken glass from the headlights found on the pavement and the tire marks thereon, showing exactly where the impact occurred, the tire tracks beginning about 2 feet east of the black center line and continuing east to the point where the cars came to rest, are mute evidence corroborating the plaintiff and her driver as to where the car was when struck by the trailer.

■ The trailer wheels were 20 feet to the rear of the truck and the trailer was loaded with logs, some of which measured 32 feet in length. Undoubtedly, the truck, trailer and its load were not less than 40 feet in length. The only way defendant's driver could have prevented the trailer from crossing to the east of the black medial line in negotiating this right angle curve would have been for the truck to keep as far as possible to the west side of the pavement before beginning to turn. In the center of the curve he had a distance of 34 feet west of the black line which was paved, no doubt for this pur-

pose. We are convinced he did not pull the truck far enough to the west before turning to get the trailer on its right side of the road.

■ Without going into details concerning the testimony given by the driver of the truck and his helper, we are impressed with the conclusion that it was impossible for them to see the rear trailer wheels and therefore could not have known whether the left trailer wheel was to the east or west. It was the duty of the driver of the truck to keep the trailer wholly on the west side of the center line of the pavement. He failed to do this and is guilty of negligence which was a proximate cause of the accident, if not the proximate cause.

Defendant contends that the driver of plaintiff's car could have avoided the collision by pulling his car onto the gravel on the east side of the pavement. We are inclined to agree with defendant in this respect. Approximately 12 feet east of the pavement and opposite the center of the curve, there was located a filling station. Gravel had been spread all the way between the station and pavement, and was used as a road by motorists in entering the filling station. The evidence shows that the gravel was not flush with the pavement, but was 3 to 5 inches lower right at the edge of the pavement. There is also some evidence that there were holes worn in the gravel, the depths of which are not shown, and it is not shown that there was any danger in driving onto this gravel. It is difficult to believe that the approaches to the filling station would have been allowed to become dangerous to drive over. If the driver of plaintiff's car had turned to the right onto this gravel, no doubt the accident would have been averted. His excuse for not doing so is twofold; (1) that the trailer unexpectedly and suddenly cut over to the east side at a time when it and his car were so close together that he did not have time to do anything but shut his eyes; and (2) the condition of the gravel in front of the filling station, which we have just discussed. It is possible that the action of the trailer was as described by him. However, it is not necessary to determine the negligence or want of negligence on the part of the driver of the car at this time, unless we find that plaintiff was guilty of contributory negligence

in not warning him of the danger or that the driver and plaintiff were on a joint adventure.

■ Plaintiff does not claim to have warned the driver of the car before the collision and her testimony, as is his, is that the danger arose and the accident occurred almost simultaneously. There was not sufficient time for a warning to be given after the danger arose. We are convinced the time was not sufficient to bar plaintiff from recovery for failure to warn the car driver, and she was not guilty of any contributory negligence in that respect.

■ The defense of joint adventure is not sustained by the evidence.

Both plaintiff and the car driver live in Oakdale, Louisiana, the driver, his wife and family, occupying an apartment in the home of plaintiff's mother. The latter lived in Joaquin, Texas, and plaintiff had a sister living in Haslam, Texas, only a few miles from Joaquin. Mr. King, the car driver, borrowed an automobile from his brother-in-law in which to make the trip, for the purpose of returning to his home a crippled son who was at the home of· King's mother. Knowing that plaintiff had a sister living in Haslam and that she wished to see her before returning to California where plaintiff had been working, asked her if she did not want to go along and help pay the gas bill. Plaintiff assented and the trip began. Mr. King did all the driving on the·trip to Joaquin. In the car with him were plaintiff and King's three-year-old child. On the way back King drove until after the accident, when he requested plaintiff to drive, stating that he was very nervous. She drove the car part of the way back to Oakdale. On the trip she paid for some of the gasoline, meals, coffee, ·cold drinks, etc., the exact amount not being shown. Plaintiff did not borrow the car and was not in any way responsible for it while on the trip or for its safe return. She had no control over it other than when King requested that she drive. Clearly, this was not a joint adventure. Delaune v. Breaux, 174 La. 43, 139 So. 753; Rhodes v. Jordan, La.App., 157 So. 811; Kimbro v. Holladay, La.App., 154 So. 369.

We therefore conclude that the proximate cause of the accident was the negligence of the driver of defendant's truck; that plaintiff was free of contributory negligence; was ·a guest in King's car, and is entitled to recover of defendant for damages occasioned by the negligence of defendant's servant.

Plaintiff is a young woman 28 years of age. She had been employed prior to the accident as a stenographer in the state of California at a salary of $20 per week. In the accident she received a blow on the forehead, also one on the nose, as well as cuts on the left cheek and left side of the upper lip. All of the cuts and abrasions have healed. It was necessary to suture the cut on the left cheek. Slight scars can be seen on her nose by very close observation, also on her lip. The one on her left cheek is most prominent. It is about an inch long and when she makes use of her mouth, it causes it to draw and become more noticeable. At the time of the accident she was healthy and weighed 120 pounds. Since that time plaintiff has lost 20 pounds and is highly nervous. At the present time she is anaemic and suffering from low blood pressure. She complains constantly of headaches and often of a stinging or burning sensation in the scars on her face. Plaintiff's nervousness is caused from the injuries received in the accident and is what is known as traumatic hysteria.

■ We would not be justified in awarding any amount for pain and suffering as plaintiff has not sued for damages on that score. She sued for and itemized her damages as follows:

1. For permanent injuries causing permanent scars and disfigurement of her face .............. $6000.00
2. For loss of salary............  120.00
3. Doctors' bills ................  36.00
4. Drug bills ...................  7.50
5. One pair of shoes which were ruined .....................  5.95

making a total of $6169.45. The last four items claimed were proven without contradiction and plaintiff is entitled to recover the amounts claimed therefor. The only permanent injury proven is the scar on her left cheek, the other injuries, hysteria, nervousness, etc., are shown by the medical profession not to be permanent. Therefore, since damages are asked only for permanent injuries, we are accordingly limited to that extent in our award.

■ An award of $2000 for scars which disfigure plaintiff's face, we think is ample.

It therefore follows that the judgment of the lower court is reversed and there is now judgment for plaintiff and against defendant in the sum of $2169.45, with legal interest thereon from judicial demand until paid; and for all costs of both courts.