REGAN, Judge.
Plaintiff, Harry Rothman, the owner and operator of a 1942 Packard Convertible, instituted this suit against the defendants, M. C. Centanni, the owner of a 1941 Ford dump truck, and his liability insurer, Western Casualty and Surety Company, endeavoring to recover the sum of $3,030 representing personal injuries and property damage incurred by him as a result of a collision between the two vehicles in the Airline Highway on April 19, 1946, at about 11:00 a.m.
Defendants answered and denied that the driver of the dump truck, Leroy J. Girstley, an employee of Centanni, was guilty of any negligence whatsoever and averred that the negligence of the plaintiff was the sole cause of the accident and, in the alternative, pleaded his contributory negligence.
From a judgment in favor of the plaintiff as prayed for defendant has prosecuted this appeal.
During oral argument before this court counsel for the defendants conceded the negligence of Girstley the driver of the defendants’ truck in that he endeavored to execute a left turn without manifesting any external evidence of his intention to do so and that they relied exclusively upon the plea of contributory negligence to defeat recovery herein.
The record reveals that the plaintiff, who was accompanied by his wife, related that he was driving his automobile about thirty-five miles per hour in the left lane of the inbound roadway of the Airline Highway in the general direction of New Orleans; that as he ascended the Kenner Overpass he observed the Centanni truck in the righthand lane of the inbound roadway thereof; as he descended the overpass he signalled his intention of overtaking the truck by blowing the vehicle’s horn and, as he drew abreast *35 of the cab thereof, the truck suddenly and without the manifestation of any signal whatsoever, endeavored to execute a left turn into the private road of T. L. James and Company, which was located on the left or lakeside of the highway at the very base of the overpass; plaintiff, in an effort to avoid the impending collision, swerved to his left and applied the brakes, but despite these efforts the left side of the truck collided with the right front side of his vehicle; as a result of the impact he was thrown through the left door thereof and into the roadway, causing personal injuries and property damage which are the subject matter of this litigation.
Plaintiff’s wife testified that they were residents of Miami Beach, Florida, visiting New Orleans for the first time; immediately prior to the accident her attention was focused upon the general terrain of her environment and, therefore, she was not familiar with the details leading up to the moment of the collision, however, she did assert that she became cognizant of an impending collision when the Centanni truck endeavored to execute a left turn into the path of their vehicle without the manifestation of any signal whatsoever. She further stated that they were moving in the left lane of the inbound roadway at a speed of approximately thirty-five miles per hour.
Plaintiff’s testimony is to some extent corroborated by that of William C. Galatas, a witness who was subpoenaed on behalf of the defendants. He asserted that he was driving a truck in the left lane of the inbound roadway trailing the plaintiff’s car but he was not in a position to see if the operator of the defendants’ truck gave any signal of his intention to execute a left turn nor was he able to hear if the plaintiff sounded his horn as he endeavored to pass the defendants’ truck. Pie stated that he was closely following the plaintiff’s vehicle intending to pass him when the opportunity presented- itself and when the defendants’ truck initiated a left turn, the plaintiff likewise turned to the left in an effort to avoid the collision; it was then that he swerved his vehicle to the right in order to safely pass both of their vehicles. However, he emphasized if the plaintiff had turned right instead of left his vehicle would have struck the plaintiff’s car “because I was going too fast to stop.”
Girstley testified that Centanni wanted to visit some one at the T. L. James and Company and, as he descended the overpass, he was driving in the left lane of the inbound roadway and signalled to make a left turn in order to drive into the T. L. James road. He then asserted “I had just about stopped; because in the lane going up I had to wait until they got clear * * * just about the time I got the back part of the truck to clear the lane I heard this car squeal and hit the truck.” He further related that his truck was equipped with a rear view mirror and that he looked but did not see any car approaching from the rear nor did he hear the plaintiff’s horn blow signalling his intention of overtaking the truck.
Centanni asserted that the truck was moving in the inbound lane of the Airline Highway and that it was his desire to visit some one in the T. L. James & Company and, therefore, as they descended the overpass the driver of his truck, without coming to a stop, signalled for a left turn and when they were in the outbound roadway of the Airline Highway his truck was struck broadside by the plaintiff’s vehicle.
The foregoing elucidation reveals that only questions of fact were posed for the trial court’s consideration. The judge thereof obviously accepted plaintiff’s version of the manner in which the accident occurred and, therefore, concluded that the plaintiff was free of any negligence which contributed to the accident and that the proximate cause thereof was the negligence of the driver of defendants’ truck in executing a left turn at a time when it was not safe to do so.
The question which this appeal has posed for our consideration is whether that find *36 ing of the trial judge is so erroneous and unsupported by the evidence as to warrant a reversal by us.
We are of the opinion that no useful purpose would be served by indulging in a protracted discussion of the foregoing testimony or by endeavoring to reconcile the respective litigants’ version of the manner in which the accident occurred. The trial judge accepted the plaintiff’s version thereof and our analysis of the record convinces us that the evidence preponderates in his favor and the judgment is, therefore, correct.
 We have repeatedly expressed the opinion that a motorist intending to execute a left turn must initially ascertain by careful observation that the maneuver can be executed safely.
The trial judge awarded plaintiff $555 for damages to his automobile, $175 for medical expenses, $300 for the rental of an automobile while his car was being repaired, which rental was necessitated by the nature of plaintiff’s business and $2,000 for personal injuries predicated both upon the plaintiff’s testimony, and principally upon the testimony of Dr. Harold P. Auslander of Miami Beach, Florida, which was taken by deposition. Dr. Auslander stated that the plaintiff had a
“Deep lacerated wound on the bridge of the nose requiring five sutures, several contusions and bruises about the head, area under the eyes black and blue due to hemorrhages under the skin, nose swollen. Patient was under great nervous tension due to the shock of the accident. Sutures were removed and antibiotics were given to prevent infection. Because of obstructive features in the nasal passages he received treatment to drain the frontal sinuses.
“Shape and configuration has been definitely changed in the nose. There is a scar on the bridge of the nose. Due to the fact that proper drainage is impossible from the frontal sinuses because of the obstructions in the passages he suffers from frequent frontal headaches.”
In view of the foregoing expert testimony which stands uncontradicted in the record we believe that the award for personal injuries is not excessive.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.