124 So.2d 409 (1960)
Warren HOFFPAUIR et al.
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY et al.
No. 106.
Court of Appeal of Louisiana, Third Circuit.
November 17, 1960.
*410 Edwards & Edwards, by Nolan J. Edwards, Crowley, for defendant-appellant.
P. J. Chappuis, II, Crowley, for defendant-appellee.
Before TATE, FRUGE and HOOD, JJ.
HOOD, Judge.
This is an action for damages arising out of a motor vehicle collision which occurred in Jefferson Davis Parish on February 25, 1958. The suit was instituted by Warren Hoffpauir, individually and as administrator of the estate of his minor daughter, and by Mrs. Dolores Broussard Hoffpauir, against Maxiel Bertrand and his public liability insurer, Southern Farm Bureau Casualty Insurance Company. It is a companion suit to and was consolidated for trial with the actions entitled Bertrand et al. v. Audubon Insurance Company et al., La. App., 124 So.2d 415, and Audubon Insurance Company v. Bertrand et al., La.App., 124 So.2d 416. After trial of these cases on their merits, judgment was rendered in favor of plaintiffs in the instant suit, and defendants have appealed from that judgment.
The accident which precipitated this suit occurred about 4:15 p. m. on U. S. Highway 190, about two and one-quarter miles west of the Town of Elton. The highway at that point is straight and runs east and west. It is a two-lane, hard-surfaced road, 24 feet in width. At the time the collision occurred, the road was dry and visibility was good.
Shortly before the accident, Warren Hoffpauir was driving his Oldsmobile automobile in an easterly direction at a speed not in excess of 60 miles per hour. Approaching him from the opposite direction *411 in the westbound lane of traffic was a school bus followed by two large van trucks and an automobile driven by John D. Bertrand, the unemancipated minor son of defendant Maxiel Bertrand. Young Bertrand was returning home from Elton, where he had driven at his father's request to pick up Mrs. Maxiel Bertrand, who was a substitute teacher at Elton High School, and who was a passenger in the Bertrand vehicle at the time of the accident.
As the Hoffpauir automobile and the school bus approached each other, the bus was being driven at a very slow rate of speed toward a regular bus stop along the highway where the driver expected to discharge school children. This bus stop was located about 40 feet west of the Maxiel Bertrand store, which is on the south side of Highway 190. In front of this store is a large, graveled parking area. The shoulder along the south side of the highway and immediately east of the Maxiel Bertrand store is wide, graveled and well maintained.
While the Hoffpauir car was in the act of meeting and passing the school bus and van trucks, Bertrand suddenly turned his car to his left into the south or eastbound lane of traffic, directly in front of the approaching Oldsmobile, and a collision between the Hoffpauir and Bertrand vehicles occurred almost immediately thereafter. The front of the Hoffpauir car struck the right side of the Bertrand vehicle, the point of impact being in the eastbound, or Hoffpauir's, lane of traffic.
Bertrand testified that he had planned to turn to his left, cross the opposing lane of traffic to the south shoulder of the highway and then drive in a westerly direction along that shoulder to his father's store which was located about 200 feet west of the place where the accident occurred. He stated that he was aware of the fact that the school bus was just ahead of the two large trucks which were in front of him, and he knew that the bus would stop just west of the Bertrand store. He further testified that he saw the red flags and the stop sign extended from the bus and he "assumed" that all oncoming traffic had stopped. He was following closely behind the truck in front of him and did not see the Hoffpauir car until he pulled into the eastbound lane of traffic. The evidence establishes that the left front wheel of the Bertrand car was on the south edge of the pavement at the moment of impact.
The law provides that the driver of any vehicle on the highways of this State shall "not attempt to make a turn unless the way is clear." LSA-R.S. 32:235 subd. A. Also, the courts of this State have held many times that a left hand turn across a highway constitutes one of the most hazardous maneuvers that a driver is called upon to perform, and that a motorist endeavoring to execute a left turn must initially ascertain by a careful observation that the maneuver can be executed safely without danger to normal overtaking or oncoming traffic and must yield the right-of-way to such vehicles. Thomas v. Morgan City Canning Company, La.App.1954, 69 So.2d 548; Fornea v. Crain, La.App.1955, 79 So. 2d 95; Tyler v. Marquette Casualty Company, La.App.1955, 79 So.2d 376; Dunnington v. Richard, La.App.1955, 81 So.2d 33; Jenkins v. Fidelity & Casualty Company of New York, La.App.1957, 92 So.2d 120; Washington Fire & Marine Insurance Company v. Wallace, La.App.1957, 92 So.2d 777; Rothman v. Centanni, La.App.1957, 95 So.2d 34; Thompson v. Ferrara, La.App. 1957, 96 So.2d 113; Ponthieu v. Dubroc, La.App.1958, 108 So.2d 25; Babineaux v. Sims, La.App.1959, 111 So.2d 848.
In Washington Fire & Marine Insurance Company v. Firemen's Insurance Company, 232 La. 379, 94 So.2d 295, 296, the Supreme Court of this State said:
"The cases are legion which hold that before making a left turn the driver of an automobile must ascertain that he may do so safely; not only is this cardinal rule of the road founded on common sense, but in our State is a positive enactment, incorporated in the *412 Revised Statutes as R.S. 32:235, by the terms of which it is the mandatory duty of the driver of any vehicle on the highways of this State to ascertain, before turning upon any highway, that there is no traffic, vehicle or pedestrian, approaching from either direction which will be unduly delayed; and said driver `shall yield the right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear * * *.'"
Bertrand admittedly made no effort to determine whether any vehicles were approaching in the eastbound lane of traffic before he turned into that lane. Under the established jurisprudence of this State, therefore, he was negligent in failing to maintain a proper lookout and in turning to his left into the opposing lane of traffic directly in the path of the approaching Hoffpauir vehicle.
Counsel for appellants argue, however, that Bertrand had a right to assume that the driver of any vehicle approaching the school bus from the west would stop, as required by law, and accordingly that he should not be held to have been negligent in acting upon that assumption and in making the left turn. A motorist has the right to assume that another motorist approaching from the opposite direction will obey the law and to act upon that assumption in determining his own manner of using the road. Hagaman v. Bankers Indemnity Insurance Co., La.App. 1942, 7 So.2d 390; Teche Lines v. Gorum, 1943, 202 La. 993, 13 So.2d 291; Thomas v. Checker Cab Company of New Orleans, 1956, 229 La. 1079, 87 So.2d 605. Applying that principle to the instant case, we find that Bertrand may have had the right to assume that the Hoffpauir car would stop for the school bus, if he had first determined that Hoffpauir was a sufficient distance from and was able to stop for the school bus after it became apparent to Hoffpauir that the bus had stopped or was about to stop for the purpose of receiving or discharging school children. Bertrand made no effort to determine the position of the Hoffpauir car, or even to observe whether there were any vehicles approaching in the opposing lane of traffic, and we have found, as will be pointed out later, that Hoffpauir was not able to stop between the time the flags were put out and the time the vehicles met. Under those circumstances we conclude that Bertrand did not have the right to turn suddenly to his left on a public highway, without first determining whether such a turn could be made safely. He could not rely solely on the assumption that any vehicles which may have been meeting the school bus would stop instantly when the flags were displayed. We find, instead, that the above cited cases support the position of appellees that Hoffpauir had the right to assume that Bertrand would obey the law by remaining in his proper lane of traffic.
We conclude, as did the trial judge, that John D. Bertrand was negligent in failing to ascertain that the eastbound lane was free of traffic before attempting to make a left turn across that lane. His negligence in that respect constituted a proximate cause of the accident.
Appellants urge that Warren Hoffpauir was contributorily negligent in that he violated a State law by failing to stop for the school bus, and that his negligence was a proximate cause of the accident. The statute relied upon by the appellants is LSA-R.S. 32:233, subd. H, which provides that:
"The driver of any vehicle meeting or overtaking any school bus, stopped or about to stop for the purpose of receiving or discharging school children (the burden of determining which fact shall rest upon the driver of the meeting or overtaking vehicle), shall bring such vehicle to a complete stop at least ten feet in the rear or front of bus, and shall remain there, stationary, until any such child has boarded such car or bus or has alighted therefrom *413 and reached the adjacent sidewalk or roadside, * * *. All school busses, upon stopping for the purpose of receiving or discharging school children, shall display a stop arm or a standard red flag both at the front of and rear of * * * said vehicle, while children are entering or being discharged therefrom. When stoparms are used for this purpose they shall be painted red with the word `Stop' in white letters."
The testimony is conflicting as to just how far Hoffpauir was from the bus when the flags were first extended. Hoffpauir testified that he decreased his speed to approximately 35 or 40 miles per hour as he approached the bus, that the flags on the bus were not extended until he was about 20 or 25 feet from it, and that he was unable to stop before passing the bus. A car being driven by A. E. Tatman, which was following the Hoffpauir vehicle, also was unable to stop after the flags were extended and before passing the bus. Appellants produced evidence to the effect that the flags were extended a considerable distance before the Hoffpauir car and the bus met. The evidence shows that the bus was still moving when Hoffpauir and Tatman passed it, and that it had approximately 200 or 250 feet farther to travel before reaching the bus stop. The trial judge concluded that the flags were not extended from the school bus in time to permit the Hoffpauir and Tatman vehicles to stop prior to passing the bus and that Hoffpauir was not negligent in his failure to stop before passing the bus. We find no error in the trial court's conclusion as to the facts or as to the law on this point.
Appellants further contend that Warren Hoffpauir was guilty of contributory negligence in failing to maintain a proper lookout and in failing to see the Bertrand vehicle attempting to make a left turn in time to bring his vehicle to a halt or to avoid the collision. Hoffpauir testified that he was about even with the rear of the school bus when he first saw the Bertrand car, that he did not see Bertrand turn to his left, but that the Bertrand car was in Hoffpauir's lane of traffic when plaintiff first saw it. Hoffpauir applied his brakes with full force immediately after seeing the Bertrand car and skidded to the point where the collision occurred. In our opinion the evidence does not indicate that Hoffpauir failed to maintain a proper lookout. We conclude that Hoffpauir exercised reasonable care and that he was free from negligence.
Appellants contend that the trial court erred in failing to hold that Hoffpauir, by pleading the doctrine of "last clear chance," admitted his own negligence and accordingly was barred from recovery. It is true that there have been judicial expressions in this State to the effect that one who relies on the doctrine of last clear chance in effect admits his own negligence. Burns v. Evans Cooperage Company, Inc., et al., 1945, 208 La. 406, 23 So.2d 165; Ballard v. Piehler, La.App.1957, 98 So.2d 273; Harrell v. Goodwin, La.App.1947, 32 So.2d 758. The theory on which recovery is permitted, notwithstanding the negligence of the plaintiff in exposing himself to injury, is that such negligence does not in a legal sense contribute to the injury, since it is a remote cause and not the proximate cause thereof. Rottman v. Beverly, 1935, 183 La. 947, 165 So. 153; Russo v. Texas & Pacific Railroad Company, 1938, 189 La. 1042, 181 So. 485; Carroll v. Louisiana Iron & Supply Company, La.App.1944, 17 So.2d 650.
The only allegation in plaintiff's petition which in any way refers to the doctrine of last clear chance, is one contained in Article §, which reads:
"* * * That the sole cause of the collision was the gross and wanton negligence of the said John D. Bertrand in: * * * 5. Failing to avoid the accident, having the last clear chance to do so."
*414 There are no other allegations in the petition which could be construed as an admission of negligence on the part of plaintiff. On the contrary, plaintiffs allege in Article 2 that Hoffpauir "was traveling at a reasonable rate of speed, keeping a proper lookout and observing all traffic laws." In Article 5 it is alleged that "Warren Hoffpauir did all within his power to avoid the collision such as immediately applying his brakes and attempting to leave the highway."
It is well settled in Louisiana that pleadings are to be construed liberally so as to yield as little as possible to technicalities in order that the ends of justice might be served. Florida Molasses Company v. Berger, 1951, 220 La. 31, 55 So.2d 771; Liuzza v. Tangipahoa Parish Police Jury, La.App.1958, 101 So.2d 473. Also, pleadings should be construed by taking the allegations thereof as a whole and not as a detached sentence or paragraph standing alone. Barnes Furniture Store v. Young, La.App.1959, 111 So.2d 549. The statement in plaintiffs' petition to the effect that defendant had the last clear chance to avoid the accident, standing alone, is a mere conclusion of the law, and we do not construe it as an admission of negligence on plaintiff's part. We agree with the trial judge that such a construction "would seem a most attenuated and technical holding."
The trial court rendered judgment in favor of Warren Hoffpauir for the total sum of $1,315.44, which included an award of $500.00 for future medical expenses for Mrs. Dolores Hoffpauir. Plaintiffs, however, did not include future medical expenses for Mrs. Hoffpauir as an item of damages claimed, and timely objection was made by counsel for defendants when plaintiffs sought to introduce evidence tending to prove such future medical expenses. We think the trial judge erred in awarding these future medical expenses, and accordingly the judgment in favor of Warren Hoffpauir, individually, should be reduced by $500.00.
As a result of the accident Mrs. Dolores Hoffpauir sustained injuries to her right eye, right ankle and right knee. The injury to her eye consisted of rather severe contusions, with subcutaneous hematoma, causing discoloration and discomfort around the eye for several weeks. The injury to her ankle consisted of probable torn ligaments, swelling, tenderness and mild subcutaneous bleeding around the ankle. She apparently recovered completely from the injuries to her eye and to her ankle within a few weeks after the accident occurred.
Dr. J. B. Hargroder examined Mrs. Hoffpauir shortly after the accident occurred and found her right knee to be swollen with several skin abrasions. X-rays taken at that time, however, revealed no fractures. Additional x-rays of Mrs. Hoffpauir's knee were made by Dr. J. W. Faulk, Jr., about 15 or 16 months after the accident occurred. The day after these x-rays were made, Dr. George P. Schneider, an orthopedist, reviewed them and made a clinical examination of Mrs. Hoffpauir. From these examinations, Dr. Schneider concluded that Mrs. Hoffpauir had sustained a fracture of the right knee cap in the accident, and that as a result of that injury she had a low grade degenerative post-traumatic chondritis of the right medial femoral condyle and the posterior-inferior portion of the right patella. He felt that although Mrs. Hoffpauir was not disabled, prolonged use of her knee would cause the persistent low grade nagging discomfort of which she complained. Dr. Schneider treated Mrs. Hoffpauir from the date of his first examination to the date of the trial, a period of three or four months, and testified that she had shown no improvement as a result of this treatment. Dr. Schneider felt that in order to correct this condition, it is probable that she will have to undergo surgery, consisting of an arthrotomy of the right knee with the removal of the degenerative cartilage. Mrs. Hoffpauir was hospitalized for one day. She was unable to walk for *415 approximately one month immediately following the accident and then used crutches for three or four weeks.
The trial judge awarded Mrs. Hoffpauir $3,500.00 for pain, suffering and mental anguish, and we do not think this award is excessive.
The injuries sustained by Sandra Hoffpauir consisted of a depressed fracture of the nasal bones, with displacement of fragments and with swelling of the soft tissues of the nose. She was hospitalized, and the nasal bones and septum were aligned with the aid of anesthesia. An intra-nasal pack was used to hold the nasal bones in place, and the nose remained swollen for several weeks. The nasal bones healed in good position, but with some permanent disfigurement. Dr. Thomas H. Casanova testified that on viewing the nose anteriorly there is a flatness on the left side as compared to the right, and that on viewing the nose from a lateral position, there is a slight elevation in the middle one-third of the nose over the area of the nasal bones. The septal columella lies slightly to the left of the midline. She missed 17 days of school and apparently suffered considerable discomfort during that time. The trial judge awarded Mr. Hoffpauir, as administrator of the estate of Sandra Hoffpauir, the sum of $3,500 for her pain, suffering and disfigurement. In our opinion, the amount awarded is fair and adequate.
For the reasons assigned, the judgment of the trial court is amended by reducing the amount awarded to Warren Hoffpauir, individually, from $1,315.44 to $815.44, and as thus amended, the judgment is affirmed. Costs of this appeal are to be paid by appellants.
Amended and affirmed.