HOOD, Judge.
This is a workmen’s compensation suit instituted by Wilson Meshell against Sabine Lumber Company, Inc., in which plaintiff contends that he is totally and permanently disabled as a result of two accidents which occurred in October, 1959, during the course of his employment by defendant. Defendant admits the employment of plaintiff and the hazardous nature of that employment, but it denies the occurrence of the alleged accidents and denies that plaintiff sustained any disabling injury while working for it. After trial of the case on its merits, judgment was rendered by the trial court in favor of defendant, rejecting plaintiff’s demands, and plaintiff has appealed from that judgment.
The evidence establishes that plaintiff was first employed by defendant in 1952, and worked for it about one year on that occasion. He returned to work for defendant in 1955, and continued to work for it from that time until his employment was terminated on November 6, 1959, a few days after the accidents which gave rise to this suit are alleged to have occurred. During all of that time plaintiff worked as a truck driver, hauling logs and lumber to defendant’s plant in Zwolle, Louisiana. His duties in connection with that employment required him to drive a truck and to assist in loading the truck with logs and in unloading it. Some of these duties involved heavy lifting, and there is no question but that plaintiff was performing heavy manual labor.
Plaintiff contends that he discontinued working for defendant because of disabling back injuries sustained by him as the result of a work-connected accident which occurred on October 28, and another such accident which occurred on the following day, *72 October 29, 1959. He testified that at about 9:00 o’clock on the morning of October 28, 1959, shortly after he had unloaded some logs from his truck a log rolled from the top of a stack of timber and struck an iron pipe which he was holding, causing him to be jerked suddenly to his knees. Plaintiff stated that he “didn’t feel too bad right then,” but that a few moments later his back began to pain him. He immediately drove his truck back to its shed, told two of his fellow-employees that he was going to see a doctor, and then, accompanied by his wife, he went to Dr. O. L. Sanders, in Converse, Louisiana, where he received medical treatment. He did not work any more that day, and he stated that he “was hurting pretty bad that night.” He returned to work the following day, but while driving out of the woods with his first load of logs that morning he attempted to round a curve and his truck overturned on its left side. He testified that he had some difficulty in getting out of the overturned truck, and that he experienced pain in the same part of his back as had bothered him the day before. He continued to work the rest of that day, however, and during the remaining days in that week, although he says he suffered pain in his back while doing so. He testified that he was hospitalized during all of the following week and that he has been disabled from performing the work of a truck driver continuously since that time.
The first question which must be resolved is whether the two accidents alleged in plaintiff’s petition actually occurred. Defendant contends that plaintiff has failed to establish the occurrence of either of them.
We agree with counsel for defendant that in a workmen’s compensation suit, as in other civil cases, the plaintiff must bear the burden of proof, and he is required to establish his claim by a preponderance of the evidence and to a legal certainty. Bankston v. Aetna Casualty Co. of Hartfort, Conn., La.App. 1 Cir., 132 So.2d 111; Bailey v. American Casualty Company of Reading, Pa., La.App. 3 Cir., 131 So.2d 220, and cases therein cited. Also, the liberal rules of evidence and procedure applicable to compensation cases do not apply to proof that an accident occurred, or if it did occur, that it caused the disability. Carter v. Dinkeldein, La.App. 4 Cir., 125 So.2d 201; Buller v. Travelers Indemnity Co., La.App. 1 Cir., 118 So.2d 134.
Plaintiff is the only witness who gave any direct testimony as to the occurrence of the first accident on October 28, 1959. His testimony was corroborated to some extent, however, by his wife and his son, both of whom testified that plaintiff returned to his home that morning, that upon his arrival he told them about the accident and that they then immediately accompanied plaintiff to the office of Dr. Sanders, in Converse, for treatment. Defendant contends, however, that plaintiff’s testimony alone is not sufficient to establish the occurrence of that accident, in spite of the corroborating statements of his wife and son, because of inconsistencies in plaintiff’s testimony, his failure to call other witnesses who were present when the accidents allegedly occurred, and because plaintiff’s testimony has been impeached or discredited by other witnesses.
Defendant relies on the established jurisprudence of this State to the effect that the testimony of the plaintiff alone may be sufficient to prove an accident, but this is subject to the condition that there is nothing which impeaches or discredits plaintiff, and his testimony is supported by the surrounding circumstances. Fouchea v. Maloney Trucking & Storage, La.App.Orl., 108 So. 2d 273; Carter v. Dinkeldein, supra; Sneed v. Lumbermen’s Mutual Casualty Company, La.App. 2 Cir., 126 So.2d 421.
Plaintiff testified at the trial that there were two other persons who were near him when the first accident occurred on October 28. Neither of those persons were called by plaintiff as witnesses, however, and defendant contends that it should be inferred that their testimony would be unfavorable to *73 plaintiff. Plaintiff explained that neither of these witnesses could see him when the accident occurred, because their view was obstructed by some logs, and that he does not know one of them. Also, it appears from the record that these two witnesses were as available to defendant as they were to plaintiff. Under those circumstances, plaintiff’s failure to call these two persons to testify at the trial clearly does not justify an inference that their testimony would be unfavorable to him. Counsel argues further that plaintiff’s failure to promptly notify his employer of the first accident and injury shows that no such accident or injury occurred. Plaintiff gave the following explanation for his failure to notify his employer promptly: “Well, I didn’t want to lay off, you know, I think I get alright. I was scared they might lay me off from my job.” Finally, defendant contends that plaintiff’s failure to obtain proof of his visit to Dr. Sanders on October 28 militates against him. The evidence shows that Dr. Sanders died before the trial began, and although his records may have been available to plaintiff, they apparently were equally as available to defendant. Plaintiff, his wife and his son, testified that plaintiff did visit and receive treatment from Dr. Sanders on that day, and there is nothing in the record to contradict their statements to that effect. We think the evidence establishes that he did visit and was treated by Dr. Sanders following the October 28 accident, in spite of the fact that he did not produce the records of Dr. Sanders’ office or other proof of that visit.
After reviewing all of the evidence, we are convinced that plaintiff’s testimony as to the occurrence of the October 28 accident is supported by the surrounding circumstances, and that his testimony to that effect has not been impeached or discredited. Accordingly, we conclude that an accident did occur on that date, as alleged by plaintiff and as described in his testimony.
In our opinion plaintiff also has established by a preponderance of the evidence that an accident occurred on the following day, October 29, as alleged in the petition. Defendant, in fact, admits that plaintiff’s truck overturned while being used by plaintiff on that day and that it had to be repaired before it could be put back into use late the same day.
The next question presented is whether plaintiff sustained a disabling injury as a result of either or both of the above described accidents.
Plaintiff testified that he continued to work the rest of the week, after the last accident occurred, and then he was hospitalized under the treatment of Dr. Sanders the following week. He concedes that he may be wrong as to the exact date he was hospitalized. The evidence shows that he worked for defendant on Tuesday and Friday of the following week, November 3, and 6, 1959, so we assume that actually he was not hospitalized by Dr. Sanders until the week beginning November 8. As has already been pointed out, Dr. Sanders died before the trial began, and no records or other proof of the diagnosis made by Dr. Sanders or of the treatment which he administered were produced.
Plaintiff then consulted and was examined by Dr. C. V. Hatchette, in Lake Charles, on January 14, 1960, and apparently on other occasions after that date. Dr. Hatchette was not called as a witness by either party, however, so there is no admissible evidence in the record as to his findings or as to the treatment which he may have administered.
Plaintiff then testified that shortly after he was first examined by Dr. Hatchette he went to Mr. Joe Ferguson, the president and general manager of defendant lumber company, informed Mr. Ferguson that he had a ruptured disc, and requested that he be sent to Dr. L. H. Murdock, the company doctor, for treatment. Plaintiff concedes that at that time he did not tell Mr. Ferguson that he had injured his back during the course of his employment by defendant. He states that Mr. Ferguson then made the *74 appointment, and plaintiff went to Dr. Murdock. Mr. Ferguson does not remember that plaintiff told him that he had a ruptured disc, but he stated, “I do remember him coming in and asking me for a slip to go to Dr. Murdock.” Mr. Ferguson further testified, however, that the first information he had of the accident and the alleged injury of plaintiff was in a letter which he received from plaintiff’s counsel, dated August 12, 1960, more than nine months after the accident occurred. This suit was filed on August 27, a few days after the above mentioned letter was received by defendant.
Dr. Murdock, who is a general practitioner, testified that he examined and treated plaintiff on January 21, 22 and 23, 1960, for complaints of low back pain, with pain radiating down his left leg. In the history which plaintiff gave to the doctor he stated that his symptoms, or his back pains, had their onset or beginning at the time of the two accidents which plaintiff alleges occurred in October, 1959. No X-rays were taken in connection with that examination. Dr. Murdock diagnosed plaintiff’s condition as “lumbo sacral arthritis,” and he administered physio therapy treatments. Although the doctor did not express an opinion as to whether plaintiff was or was not disabled, we gather from his testimony that he felt that plaintiff’s infirmity was of a minor nature and was not disabling. Dr. Murdock did not see plaintiff again after January 23, 1960, but he testified that plaintiff was seen by his associate, Dr. Sauls, on September 23, 1960, complaining of “pain over low back and hips, pain in right chest.”
Dr. Murdock further testified, without objection, that plaintiff also was examined by Dr. Sauls on November 5, 1959, just a few days after the accidents occurred. Dr. Sauls was not called as a witness, and although Dr. Murdock did not see plaintiff on that occasion, he testified that his office records reflect that plaintiff was “down in the back for one month, prostrate massage.” Also, according to his records, plaintiff has been examined or treated by Dr. Murdock or by some of his associates on six occasions prior to the time these accidents occurred. On only two of those occasions, however, were there any complaints or treatment which in any manner related to the back. The first such occasion occurred on December 30, 1955, and the doctor’s testimony is simply that “he came in with a pain in the back, and his nerves and so forth.” The doctor had no recollection of the diagnosis or treatment administered on that date. The second such occasion was on June 19, 1956, but plaintiff was seen at that time by a Dr. Prettywells, another associate of Dr. Murdock, who was not called as a witness. The only information shown on Dr. Murdock’s records with reference to that visit was that plaintiff “said his back had been bothering him for three weeks, worse the past week, worse in the morning when he gets up and has urinary symptoms.” Dr. Murdock apparently attributed plaintiff’s earlier back complaints to prostate trouble.
On October 14, 1960, or about six weeks after this suit was instituted, plaintiff consulted and was examined by Dr. H. K. Falu-di, a neurosurgeon, who diagnosed his condition as a herniated disc between 1^5 and S-l on the left side. Following this diagnosis surgery was performed on plaintiff’s back by Dr. Faludi on December 14, 1960, and during the course of this surgery the diagnosis of a herniated disc was confirmed. The operation consisted of a hemilamin-ectomy, removing half of the lamina of L-5 on the left side, exploration of the inter-space between L-5 and S-l and the inter-space between L-4 and L-5, and the removal of the herniated disc. Dr. Faludi’s last deposition was taken on March 27, 1961, and his testimony is uncontradicted to the effect that plaintiff was disabled from doing the work of a truck driver at the time he first examined him on October 14, 1960, and that he would still be disabled at the time of the trial, which took place on May 9, 1961. According to Dr. Faludi, this herniated disc could have been caused by either or *75 both of the accidents which occurred in October, 1959.
Defendant takes the position, however, that plaintiff has failed to show a causal connection between the accidents which occurred in October, 1959, and his present disability, and counsel presents a number of arguments to support that position. One is that plaintiff sought medical attention for his back on at least two occasions before these accidents occurred, which indicates that he had a bad back condition before that time. It is also contended that plaintiff performed heavy manual labor, consisting of driving a log truck and sawing logs, after the accidents occurred, indicating that he was not disabled as a result of these accidents. Defendant further calls our attention to the fact that after his alleged injury, plaintiff applied for and collected unemployment compensation benefits on the representation that he was able to work. And, finally, defendant argues that plaintiff’s failure to report the accident and injury to his employer until almost ten months after the accidents occurred shows that no injuries were sustained as a result of those accidents.
In our opinion the evidence does not support defendant’s argument that plaintiff had a back injury before the accidents occurred, or that he performed heavy manual labor after that time. The fact that he received unemployment compensation payments after his injury on the representation that he was able to work must be considered in connection with his later testimony that he was unable to perform heavy manual labor at that time. The record does not show the statements which were made in connection with his application for unemployment compensation, the only evidence to that effect being some testimony elicited from plaintiff, himself, which we find to be vague and indefinite as to what representations he actually made in connection with his unemployment compensation payments. On the basis of the evidence presented here, we are unable to say that plaintiff at that time represented that he was able to perform heavy manual labor similar to that which he had previously done. In view of the fact that plaintiff appears to have made prior contradictory statements on this point, however, we have again reviewed all of the evidence carefully and are convinced that plaintiff’s testimony has not been impeached or materially discredited. We think his failure to report the accident promptly has been adequately explained by plaintiff, and we attach no significance to his failure to do so.
Plaintiff was about 42 years of age at the time of the trial. His family consists of a wife and nine children, and prior to the time of his injury he provided the sole support for that family. Defendant concedes that plaintiff worked with “ordinary regularity” for the better part of eight years immediately prior to the accident, and his fellow employees testified that he was a good worker. He has never made a claim for compensation payments before this suit was instituted. His prior work record and the fact that he has a large family to support indicates to us that he would have no motive in feigning a disability in order to obtain compensation payments. Also, it seems to us that he has demonstrated that he wants to recover and to return to work by voluntarily arranging for and submitting to surgery after the suit had been filed.
We are convinced that the accidents occurred as alleged in plaintiff’s petition, and that as a result of those accidents plaintiff sustained a back injury consisting of a herniated intervertebral disc, which has rendered him totally disabled from performing heavy manual labor since that time. He was still disabled at the time of the trial, and it is uncertain as to when he may recover and be able to perform heavy manual labor. Under those circumstances, plaintiff is entitled to recover on the basis of total and permanent disability. We must disagree with the learned trial judge, therefore, in his conclusion that plaintiff failed to make out his case to the degree of certainty required by law.
*76 The parties have stipulated that plaintiff was earning $1.00 per hour at the time the alleged accidents occurred. Plaintiff contends, correctly we think, that according to the evidence his daily rate of pay was $8.00, and that under Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399, his rate of compensation must be computed on the basis of a six day week. Accordingly, we find that plaintiff’s weekly wages were $48.00, and that he is entitled to compensation at the rate of $31.20 per week.
The evidence establishes that plaintiff incurred medical expenses amounting to $435.00 and a hospital bill in the amount of $304.20, which expenses he is entitled to recover.
Plaintiff also demands penalties and attorney’s fees under the provisions of LSA-R.S. 23:1201.2 and under LSA-R.S. 22:658. Since defendant, however, was not informed of the fact that plaintiff had sustained accidental injuries during the course of his employment until almost ten months after the injuries were sustained, and only a few days before suit was filed, we are convinced that the failure of defendant to make compensation payments promptly was not arbitrary, capricious or without probable cause, and accordingly no penalties are due.
For the reasons herein set out, the judgment of the trial court is reversed, and it is ordered, adjudged and decreed that judgment be and it is hereby rendered in favor of plaintiff, Wilson Meshell, and against defendant, Sabine Lumber Company, Inc., condemning defendant to pay unto plaintiff workmen’s compensation benefits in the amount of $31.20 per week, beginning on October 29, 1959, and continuing during plaintiff’s disability, not to exceed 400 weeks, with interest at the rate of five percent per annum on each payment from the date it became or becomes due, until paid. Judgment further is rendered in favor of plaintiff and against defendant for the sum of $739.20, with interest thereon at the rate of five percent per annum from date of judicial demand, until paid, and for all costs of this suit. The fees of Dr. Faludi for expert testimony on two separate occasions are fixed at $100.00, and the fees of Dr. Murdock for giving expert testimony on one occasion are fixed at $50.00, and these fees are taxed as costs. All costs of this appeal are assessed to defendant-appel-lee.
Reversed and rendered.