173 So.2d 284 (1965)
Peggy FONTANA, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
No. 1358.
Court of Appeal of Louisiana, Third Circuit.
March 24, 1965.
Rehearing Denied April 14, 1965.
Writ Refused June 8, 1965.
*287 Roach, Hennigan & Shaheen, by Philip J. Shaheen, Jr., Lake Charles, for plaintiff-appellant.
McBride & Brewster, by William H. McBride, Lafayette, for defendant-appellee.
Before TATE, HOOD, and CULPEPPER, JJ.
TATE, Judge.
This is a tort suit. The plaintiff Mrs. Fontana was injured while riding as a guest passenger. Made defendant is the liability insurer of the host driver. The plaintiff passenger appeals from the trial jury's denial of her claim.
Only two witnesses to the accident testified, (a) the plaintiff, Mrs. Fontana, and (b) S. P. Larussa, the defendant's insured and the driver of the vehicle in which Mrs. Fontana was injured. Both of them testified to the following facts:
Shortly after midnight on April 3, 1962, they were travelling on a hard-surfaced rural highway between Lafayette and Breaux Bridge, Louisiana. The Larussa car, at a speed of about 60-65 mph, came upon another car on the highway driving in the same direction at approximately the same rate of speed, which other vehicle was weaving on the highway. After following shortly behind the weaving automobile, Larussa increased his speed and attempted to pass the vehicle after it veered to the right, partly on the right shoulder.
However, the weaving automobile veered suddenly back towards the center of the highway. Larussa immediately applied his brakes to avoid a collision. The sudden application of the brakes caused Mrs. Fontana's face to be thrown against the dashboard.
Plaintiff-appellant contends that the trial jury was in manifest error in denying the plaintiff's claim under this uncontradicted evidence that her personal injury resulted from an imprudent attempt of Larussa to pass the weaving forward vehicle and his consequent necessity to make a sudden stop causing damage to his passenger, which was a foreseeable hazard of the imprudent attempt to pass the erratically moving forward vehicle. As we will state more fully below, we think these contentions are well-founded.
However, able counsel for the defendant-appellee strenuously argues that the trial jury was entitled to disbelieve entirely the testimony of both witnesses, and that such a credibility evaluation by the trier of fact should not be disturbed on review. In principal alternative, counsel further argues that any sudden stop of its insured Larussa is excused under the sudden emergency doctrine, as having been precipitated by the sudden veering of the forward vehicle back towards Larussa while the latter was attempting to pass it.
As we see it, the fallacy in the defendant-appellee's argument that manifest error precludes reversal is that, irrespective of the trial jury's evaluation of the credibility of the two witnesses to the accident, the plaintiff has preponderantly proved that her injuries resulted from a negligent sudden stop on the part of defendant's driver, while the defendant insurer has no evidence whatsoever proving its affirmative defense that such sudden stop resulted from a sudden emergency not created in whole or in part by negligence on the part of its driver. Under these circumstances, the jury's verdict rejecting the plaintiff's claim is manifestly erroneous, whether it resulted (as the defendant suggests) from an unfavorable evaluation of the plaintiff's credibility, or instead (as the plaintiff suggests) from a mistaken application of the sudden emergency doctrine.
The undisputed facts are that the insured driver suddenly applied his brakes, throwing *288 his passenger's face against the dashboard. This is proven not only by the testimony of the plaintiff and the driver, as corroborated for instance by the nature of the facial injuries and the description of the accident given to the attending physician. It is further admitted by the defendant in its answer to the suit, Articles VII and VIII, in which the sudden application of the brakes is admitted, but is sought to be excused on the ground of a sudden emergency.
The driver of an automobile owes to his guest passenger the duty of exercising ordinary and reasonable care for his safety, and this duty exists with respect to the maintenance of proper speed and control of the vehicle. 60 C.J.S. Motor Vehicles §§ 397 and 399(1), pp. 975 and 977. Thus, the driver's unexplained or unexcused sudden application of his brakes, causing injury to his passenger, constitutes negligence. Christian v. Walsh, La.App. 1 Cir., 70 So.2d 733. See also decisions such as Gunter v. Lord, La.App. 3 Cir., 132 So. 2d 488 (amount of award modified, 242 La. 943, 140 So.2d 11).
The defendant-appellee specifically pleaded that the sudden stop was occasioned by the sudden entry of an unknown driver onto the highway from the right and directly into the defendant's driver's path. Articles VII, VIII of answer.
By the defense of sudden emergency, an otherwise negligent act is held excusable on the ground that the actor was confronted by a sudden emergency not created through his own negligence, so that any misjudgment on his part is excused if consistent with the prudence of an ordinary man suddenly confronted with an unexpected danger. Jones v. Continental Casualty Co., 246 La. 921, 169 So.2d 50, 58.
Sudden emergency is a matter of defense to a claim of negligence, rather than a circumstance the plaintiff must negative in order to prove his claim of negligence. See Prevost v. Smith, La.App. 1 Cir., 197 So. 905, 915; Kaough v. Hadley, La.App. 1 Cir., 165 So. 748. The plea of sudden emergency is thus an affirmative defense[1], which must be (and herein was) pleaded by the party relying upon it, LSA-C.C.P. Art. 1005, who bears the burden of proving affirmative defenses pleaded and relied upon, Ray v. Martin, La.App. Orl., 117 So.2d 839.
In the present instance, the defendant-appellee produced no proof that a driver suddenly entered the highway, in its path, nor did it even prove that there was a side-road from which such a vehicle could suddenly have come, as pleaded. The defendant-appellee has not borne its burden of proving its defense of sudden emergency, unless the testimony in the record (that of the plaintiff and the defendant's driver) sustains the plea.
As earlier noted, this testimony is to the effect that the plaintiff Mrs. Fontana was thrown forward and injured because the defendant's driver suddenly applied his brakes, when he tried to pass a weaving car, and the forward vehicle swerved back in his path after having first veered right-ward partly on the shoulder. The driver had followed the weaving forward vehicle for a short distance, and Mrs. Fontana had cautioned him that the driver was apparently intoxicated.
We think that the driver was negligent under the circumstances in his imprudent attempt to pass the weaving vehicle and his consequent sudden application of his brakes necessitated when it weaved back towards the center of the road. Negligence is "`conduct which creates an undue risk of harm or injury to others; the failure *289 to use such care as is necessary to avoid a danger which should and could have been anticipated.'" Larned v. Wallace, La.App. 3 Cir., 146 So.2d 434, 437. "* * * [w]hether or not fault exists depends upon the facts and circumstances in each particular case. In determining fault, a common-sense test is to be appliedthat ishow would a reasonably prudent man have acted or what precautions would he have taken if faced with similar conditions and circumstances? The degree of care to be exercised must always be commensurate with the foreseeable dangers confronting the alleged wrongdoer." Brown v. Liberty Mutual Ins. Co., 234 La. 860, 101 So.2d 696, 698.
The driver's attempt to pass the weaving forward vehicle, which was proceeding at a speed of about 60 mph, was negligent under the circumstances. Cf., Felt v. Price, 240 La. 966, 126 So.2d 330. It subjected his passenger to an undue risk of harm from the reasonably foreseeable danger that the weaving forward vehicle might as it did, swing back into its path before he could successfully complete the passing operation. The imprudent attempt to pass and the consequent sudden application of brakes were the proximate cause of the plaintiff's injuries.
Consequently, the defense of sudden emergency is not available to excuse the defendant's driver's sudden application of his brakes causing harm to his passenger, for his own imprudent attempt to pass contributed to any emergency which he faced because of the swerve back towards him of the weaving forward vehicle. "`The plea of "sudden emergency" may be availed of only when the party pleading it is himself free from fault and has not contributed to the creation of the emergency.'" Chouest v. Remont, La.App. 1 Cir., 81 So. 2d 568, 571. See also Cormier v. Traders & General Ins. Co., La.App. 3 Cir., 159 So.2d 746 (award modified, 246 La. 976, 169 So.2d 69).
Other contentions of the defendant-appellee need not detain us long. No basis is shown for any contributory or independent negligence on the part of the passenger so as to bar her recovery. See, e. g., Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; White v. State Farm Mut. Auto. Ins. Co., 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338. Likewise, no basis is shown for the argument that the passenger and the driver were in a joint venture so that (insofar as third persons are concerned) the driver's negligence may be imputed to the passenger. See Squyres v. Baldwin, 191 La. 249, 185 So. 14; Cornelius v. Fields, La.App. 1 Cir., 122 So.2d 704. Nor is any unfavorable inference to be drawn from the failure of the plaintiff (or the defendant, for that matter) because of the failure to call as witnesses the occupants of a following car, who were not closely related or subject to the control of the plaintiff, whose testimony would be merely corroborative or cumulative, and who were equally available to either party.[2] See generally 31A C.J.S. Evidence § 156 (3), p. 403; also, e. g.: Meshell v. Sabine Lumber Co., La.App. 3 Cir., 137 So.2d 70; Haynes v. Modern Woodmen of America, La.App. 3 Cir., 135 So.2d 548, 549.
Quantum.
We find the plaintiff Mrs. Fontana's injuries to be as follows:
She was thrown against the dashboard, striking and bruising her right eye and cheekbone, sustaining a laceration under the eye which required suturing and which has left a small scar as permanent residual. The plaintiff, who also suffered a concussion, was hospitalized at least ten days. The attending physician estimated that her *290 residual headaches probably endured for three or four months subsequent to the injury, although the plaintiff and her mother testified to greater severity and longer duration of these headaches.
According to the attending physician, Mrs. Fontana's eye was not injured from a functional standpoint, and the only permanent residual is the small slightly visible scar on her face: This scar measures slightly over half an inch, and is at the outer corner of the eye where the eyelids come together; the scar has some fixation to the undertissue and causes some dimpling. Mrs. Fontana is a young lady twenty years of age, divorced, formerly employed as a legal secretary.
No special damages are proven. Minimizing (as the trial jury may have) Mrs. Fontana's subjective complaints of more persistent and serious headaches than the attending physician thought probable, we nevertheless think that she is entitled to an award of three thousand dollars as general damages for (a) her initial pain and rather severe discomfort resulting from nontrivial facial injuries, (b) her initial concussion and residual headaches of diminishing intensity for four months after the accident, and (c) her residual face scar, considering in this regard that the plaintiff is a comely young lady (her picture is in the record) of marriageable age whose habitual occupations require her to meet the public.
We think an award in this amount ($3000) is consistent with those made in the following female-disfigurement decisions, taking into consideration differences of the accompanying injuries or (in the case of the earlier awards) the decreasing purchasing power of the dollar: Little v. Safeguard Insurance Co., La.App. 3 Cir., 137 So.2d 415, syllabus 10 ($3250, for broken nose of 12-year-old girl leaving slightly noticeable asymmetry of left nasal passage); Scott v. Lumbermen's Mutual Cas. Co., La.App. 3 Cir., 134 So.2d 553 ($3500, four tiny scars on young girl, only one of which is visible at 15-20 feet); Hoffpauir v. Southern Farm Bureau Cas. Co., La. App. 3 Cir., 124 So.2d 409 ($3500, slight disfigurement of young girl's nose); Carlisle v. Parish of East Baton Rouge, La. App. 1 Cir., 114 So.2d 62 ($2000, very slight deflection in nose of teen-aged girl); Gillespie v. Louisiana Long Leaf Lbr. Co., La.App. 2 Cir., 185 So. 116 (1938) ($2000 for inch-long scar on cheek and unobservable other scars on 28-year-old unmarried lady); Dyess v. Landry, La.App.Orl., 132 So. 242 (1931) ($3000, principally for disfigurement caused by noticeable two-inch scar on cheek of comely, unmarried, 23-year-old nurse).
Decree.
For the foregoing reasons, the judgment of the trial court dismissing the plaintiff's suit is reversed; it is further ordered, adjudged, and decreed that there be judgment in favor of the plaintiff, Mrs. Peggy Fontana, and against the defendant, State Farm Mutual Automobile Insurance Company, holding said defendant liable in the full sum of Three Thousand and No/100 ($3,000.00) Dollars, together with legal interest thereupon from date of judicial demand until paid. The defendant-appellee is cast with all costs of these proceedings and of this appeal.
Reversed and rendered.
HOOD, J., dissents.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.
NOTES
[1] See Black's Law Dictionary (4th ed., 1951) verbo "Affirmative defense", p. 82: "In code pleading. New matter constituting a defense; new matter which, assuming the complaint to be true, constitutes a defense to it."
[2] Here, for instance, a discovery deposition shows that the names of these witnesses were known to the defendant-appellee at least a year in advance of the trial. If their testimony might have been unfavorable to the plaintiff's case, the defendant had the full opportunity to call them to testify at the trial.