GUIDRY, Judge.
Plaintiff, Robert E. Majors claims workmen’s compensation benefits for total and permanent disability, attorney’s fees and penalties, as a result of an alleged injury which he sustained while working for National Maintenance Corporation, defendant herein.
After trial on the merits the plaintiff, although found not to be permanently disabled, was awarded judgment in his favor. The trial court condemned the defendant, National Maintenance Corporation, to pay plaintiff Workmen’s Compensation Benefits of $65.00 per week for the period from August 28, 1973 to October 24, 1973, medical expenses in the amount of $196.00 and assessed all costs to the defendant. The plaintiff’s claim for penalties and attorney’s fees was denied. Plaintiff appealed.
On or about August 28, 1973 the plaintiff, a carpenter, while working for the defendant, at the Allied Chemical Plant in Geismar, Louisiana was involved in an accident. The record reflects that the plaintiff, along with some of his co-employees, was handling visqueen (plastic sheets) when the visqueen was suddenly sucked into a large fan located in an adjoining cooling tower. The plaintiff became entangled in the visqueen and as a result of his being so entangled and while freeing himself allegedly sustained injury to his shoulder. The testimony does not clearly set forth whether the plaintiff complained of his shoulder injury at the time of the accident however it is clear that the plaintiff was involved in an accident and did sustain a laceration of his wrist. The plaintiff refused first aid and continued to work through the day. The plaintiff worked for over a week thereafter and was laid off on September 4th due to a reduction in the labor force.
*150 The plaintiff first saw his family physician, Dr. E. C. Merse, on September 11, 1973. Dr. Merse, who saw the plaintiff only on this occasion, testified that Majors had sustained a shoulder sprain. Dr. Merse prescribed muscle relaxants and physiotherapy. Dr. Merse felt that on the occasion of this visit the plaintiff was disabled however, he ventured no opinion as to the length of disability.
Plaintiff next saw Dr. Cayer, an orthopedic surgeon who examined him on October 10, 1973 and described his findings as,

"considerable tenderness over the bicipi-tal groove, and a little tenderness in his acromioclavicular joint ”

Dr. Cayer further testified that he gave the plaintiff a shot of cortisone and mar-cain, and as a result the plaintiff had almost immediate and complete relief. On October 24th the plaintiff returned to Dr. Cayer for a checkup but at this time the plaintiff had no complaints, needed no further injections, and was discharged. The record shows that Majors returned to Dr. Cayer on April 18, 1974 with complaints of pain in the bicipital tendon. He was having no problems with the acromioclavicular joint. Dr. Cayer reinjected his bicipital tendon and again Majors got complete and immediate relief of his symptoms. This injection lasted until Majors final visit to Dr. Cayer on November 4, 1974, some 8 or 9 months before trial on which visit Dr. Cayer again administered an injection of cortisone and marcain. Dr. Cayer stated that these injections in no way prevented the plaintiff from performing his work as a carpenter. The above constituted the entire course of medical treatment for plaintiff’s alleged injury.
After being laid off from National Maintenance on September 4, 1973 the plaintiff did not return to work until December 10, of that year. There is nothing in the record to substantiate that plaintiff was unable to perform his usual work during the period from October 24th to December 10th. On the latter date plaintiff re-entered the labor force as a union carpenter. During the period following December 10, 1973 Majors was on call for union jobs and as a result his employments varied in location and duration. It is clear that his job always included carpentry work and as the evidence indicated, he performed his work with little or no difficulty.
The trial court found that the plaintiff did sustain an injury to his shoulder on August 28, 1973 and that this injury was sustained in the course and scope of his employment with the defendant, National Maintenance Corporation. We are in accord with the trial court’s decision to grant the plaintiff disability benefits as a result of his injury and we agree with the trial judge that plaintiff’s benefits were properly terminated on October 24, 1973, the date of his discharge by Dr. Cayer.
The plaintiff contends that he is entitled to an award for permanent disability, however, as the trial court found there is no evidence in the record to support this claim. The plaintiff first visited Dr. Cay-er, an orthopedic surgeon, on October 10, 1973, at which time his complaints were treated with an injection of cortisone and marcain. He admitted to receiving immediate and complete relief, and that such was the case two weeks later when he was rescheduled by Dr. Cayer for a checkup. The plaintiff was discharged by Dr. Cayer at this time. Thereafter the plaintiff returned to work as a carpenter. Although the plaintiff received reinjection some 6 months later on April 18, 1974 and another almost 7 months later on November 4th, there is no evidence that he was not working during this time, or was unemployed at any other time as a result of his shoulder injury.
We are also in accord with the trial court’s denial of the plaintiff’s claim for penalties and attorney’s fees. Under R.S. 23:1021.2 and 22:658 failure of the employer or his insurer to make workmen compensation payments when such failure is arbitrary and capricious will subject the *151 employer or his insurer to payment of reasonable attorney’s fees and penalties. In the case at bar although plaintiff was not paid any benefits following his lay-off on September 4, 1973 he did not inform his employer that he had sustained accidental injuries during the course of his employment until almost 7 months after the injury occurred, and did so only through the filing of the instant matter. The employer was cognizant of the accident but was never made aware that the plaintiff was disabled as a result thereof. In fact the plaintiff worked for the defendant immediately following the accident, and continued in such employment until he was laid off by reason of a reduction in labor force. We are therefore in agreement with the trial court’s finding that the employer’s failure to pay compensation benefits was not arbitrary or capricious. Meshell v. Sabine Lumber Co. (La.App. 3rd Cir. 1962) 137 So.2d 70.
For the above and foregoing reasons the judgment appealed from is affirmed at appellant’s costs.
AFFIRMED.