BARNETTE, Judge.
This suit is the result of an automobile collision which occurred on December 30, 1966, at the intersection of Veterans Memorial Highway and Focis Street in the Parish of Jefferson. Judgment was rendered in favor of plaintiffs Mary Gengo, wife of/and Everard W. Marks, Jr., against defendants John C. Fereday and his liability insurer, Lumbermen’s Mutual Casualty Company, for the sum of $3,975.03. The sum of $975.03 represented medical expenses and property damage; the $3,000 represented personal injuries for pain and suffering and residual facial scar sustained by Mrs. Marks. The plaintiffs appealed seeking an increase in the amount awarded for personal injuries. The liability of the defendants is not at issue, having been conceded by them; in fact, the defendants have paid to plaintiffs the amount of the trial court judgment, without prejudice and subject to the devolutive appeal of plaintiffs. Therefore, the only issue before this court is the sufficiency of the trial court’s award for personal injuries to Mrs. Marks.
In an effort to determine the severity of plaintiff’s injuries we have carefully considered her testimony and the depositions of three treating physicians, filed in evidence by stipulation.
Immediately after the accident, plaintiff was taken to her family physician, Dr. Christopher Bellone. Dr. Bellone testified that plaintiff appeared in his office bleeding from a laceration of the chin and lower lip. She appeared quite upset and was complaining of neck pain and some chest pain. His examination revealed that she suffered a through and through laceration below the lower lip, requiring 5 sutures to close the wound. He also found “some little contusions * * * on the top part of the chest.” He prescribed a sedative for pain and an antitoxin, and advised plaintiff to rest as much as she could. He next saw plaintiff on January 4, at which time he removed the sutures; she was still complaining of neck pains. He saw her again on January 9 and 16 for “check-ups,” and felt that the laceration was well healed by January 16. He treated her for the laceration only; the cervical strain was not in his specialty.
Dr. Adolphus William Dunn, an orthopedic surgeon, first saw Mrs. Marks on January 4, 1967. He testified that she complained of pains in her neck area and of severe headaches. She complained of some pain in the lower lumbar area, but she stated that it had largely subsided. His examination of that area did not reveal any symptoms that he felt needed treatment. X-rays were taken of the neck area. He concluded that plaintiff had suffered “muscle sprain and soft tissue injuries of the cervical spine of her neck.” She was provided with a soft cervical collar for support of the neck, which she was instructed to wear when she was up and about. She was given a prescription for a muscle relaxant and aspirin to relieve pain. Dr. Dunn next saw plaintiff on January 25. At that time his examination indicated about 50-percent symptomatic improvement, but still Mrs. Marks complained of constant headaches. His examination revealed tenderness over the occipital area, i. e., the back of the *292 head; and over the cervical spine area. She had full range motion of the neck although some discomfort was experienced on flexion and extension. She was instructed to discontinue use of the cervical collar gradually. She was again seen by Dr. Dunn on March 20, at which time she complained of generalized headaches, as well as discomfort in her neck late in the day. There was no muscle spasm in the neck and no limitation of motion. There was still some tenderness over the trunk and neck muscles in the back, and some pulling in the neck. Dr. Dunn last saw Mrs. Marks on April 19. At this time she was found to be much improved symptomatically. She had neck discomfort only on flexion and extension of the neck. Her headaches were mild and less frequent, ,and she had full motion of her neck. Dr. Dunn felt that further treatment was not indicated, and told her to' return as necessary.
When asked if there was any relationship between the injuries to plaintiff’s neck and her headaches, Dr. Dunn stated that headaches are not uncommon and are compatible with the injury plaintiff received.
When questioned as to the pulling pain in plaintiff’s neck, he testified:
“A Well, I think this was simply a healing phase of her injury. A scar was forming, therefore, it felt tight and pulling when she moved her head.
Q What do you mean, a scar was forming, Doctor?
A Well, whenever you strain or stretch any tissue beyond its physiological limits, you have a certain amount— you have some tearing, and I think that she had had some tearing, which is what sprain really means, of the soft tissues of her neck, and that this had healed, and whenever anything heals a scar is involved, of course.
Q Doctor, I would ask you if you could please simplify that for me, as well as for the Court, for the record?
A Well, all right. Let’s say you have any structure that’s pulled to the point that it tears — any structure in the body that’s pulled to the point of tearing, of course, has to heal, just like you have a cut on your skin and it heals with a scar — well, this is the same thing. And the muscles, ligaments of the body, if they are torn, and it’s impossible, of course, to know to what extent these are torn without surgical exploration, which is not warranted, there is bound to be some scar formed. The scar is tender in its early phase, and the first two, three or four months, and then it matures, and there’s very little residual disability with this type of injury, as a rule — very little, if any, residual disability.”
Dr. Duncan M. McKee, a plastic reconstructive surgeon first saw plaintiff on March 28, 1967. He testified that she had a curvilinear scar on the lower lip-chin area, which measured approximately two centimeters in length, was partially curved, with some pigment in the scar. On July 7, Dr. McKee performed corrective surgery on the plaintiff to change the direction of the scar to alleviate the curved aspect of the original scar and make the new and smaller scar run in the general direction of the normal lines of the lower face. In his opinion the operation was satisfactory; there was no pigmentation after the surgery and plaintiff would suffer no physical after effects. The surgery was performed on Mrs. Marks as an outpatient using local anesthesia. He felt that plaintiff has suffered a minor cosmetic defect, and further surgery would not be necessary.
Mrs. Marks testified that after the accident she felt stiff and sore in her neck and upper back area and suffered from headaches. She remained in bed for about two weeks following the accident. She wore the cervical collar steadily for two months and “off and on” for three more months. She stated that, she felt much better in April when she last saw Dr. Dunn, *293 but testified that she suffered from tightness in the neck muscles and headaches as late as June, 1967. She testified that after the corrective surgery to her lip, she suffered considerable pain around her mouth and jaw area during the healing process. In view of plaintiff’s obvious disappointment with the quantum of damages awarded by the trial judge, as evidenced by her appeal, we have made a careful analysis of the pertinent testimony to determine if there was an abuse of the “much discretion” vested in the trial judge. We have given a rather complete summary of the pertinent testimony above. Furthermore, we have examined photographs filed in evidence showing the lip scar before and after the plastic surgical procedure described by Dr. McKee. The scar is visible but not disfiguring in the sense that it detracts from her appearance. Mrs. Marks was 27 years old at the time of the accident, and we have no doubt that the scar, though minimal, gives her some concern.
The trial judge awarded $1,500 for pain and suffering. We must assume that he took into account the discomfort from the cervical sprain, the headaches and the pain associated with the lip injury, which was prolonged by the necessity of plastic surgery. He awarded an additional $1,500 for the residual facial scar.
If we were called upon initially to make an award we might have considered a somewhat larger amount for pain and suffering, but when we consider the total award of $3,000 for all the injuries sustained we cannot say that there was an abuse of the “much discretion” vested in the trial judge.
Counsel for appellant and the appellees have each cited cases in support of his argument on the issue of quantum. They are of no great help to us in determining the proper amount to be awarded in this particular case. No two cases are alike in every aspect, and we have made no attempt to categorize the injuries sustained by Mrs. Marks simply to fit into a range of awards in similar cases. An attempt was made to provide a formula to apply in such cases in Cassreino v. Brown, 144 So.2d 608 (La.App. 4th Cir. 1962), but rejected by the Supreme Court in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); and Lomenick v. Schoeffler Cadillac, 250 La. 959, 200 So.2d 127 (1967).
We have applied the principle of law set forth by the Supreme Court in those cases in accordance with our understanding of them. Our conclusion is that the award of $3,000 in this case is not so out of line with awards in other cases as to manifest an abuse of the trial judge’s “much discretion”; therefore, an increase of the award is not warranted.
For these reasons the judgment appealed is affirmed at appellants’ cost.
Affirmed.