BLANCHE, Judge.
Judgment was rendered in this personal injury suit in favor of plaintiff, individually and as administrator of the estate of his minor daughter, and against defendants, the Police Jury of the Parish of Terre-bonne, Louisiana, and Johnny Dupiantis, *481 employee of the Police Jury, in solido, for damages resulting from personal injuries sustained by the minor, Lisa Luke. Defendants perfected a suspensive appeal from the judgment, contending that the trial court erred in finding liability on the part of the defendants, and, alternatively, making an award of excessive general damages on behalf of the injured minor. Plaintiff perfected a devolutive appeal from the judgment seeking an increase in the award of general damages on behalf of his minor daughter. Our review of the record fails to disclose any manifest error committed by the trial judge in any respect, and we, accordingly, affirm.
The trial judge rendered Written Reasons for Judgment ably summarizing his findings of fact and the conclusions drawn therefrom, from which we quote approvingly as follows:
“This is a suit for damages by Anthony Luke, individually and on behalf of his minor daughter, Lisa Luke. The defendant, The Police Jury of the Parish of Terre-bonne is the owner and operator of a certain bridge known as the ‘Cambon Bridge’ located on Grand Caillou Route in the Parish of Terrebonne, Louisiana. The defendant, Johnny Duplantis was on September IS, 1968, employed by the Terrebonne Parish Police Jury as a bridge tender on the ‘Cambon Bridge’.
“At approximately 2:00 p. m. on September 15, 1968, Lisa Luke, then 9 years of age, crossed the ‘Cambon Bridge’ from the right descending bank of Bayou Grand Caillou to the left descending bank of Bayou Grand Caillou. There is some conflict in testimony as to whether she was alone at this time or in the company of some other children. This Court feels that she was in the company of some other children.
“When Lisa and her friends reached the bridge approaches on the left descending bank of the bayou, after crossing the span, she helped the bridge tender by lowering the gate which was designed to prevent traffic to enter [sic]' upon the bridge while it was open for boat traffic. A vessel had signaled its intention to pass through the bridge immediately before Lisa started to cross the bridge. It was customary for children and adults to help Mr. Johnny by lowering the gate on the opposite side of the bayou from him when it was necessary to open the bridge.
“The ‘Cambon Bridge’ in service at the time of the accident sued upon had been constructed about two years before. It replaced an old structure on the same site. It was designed to accomodate [sic] one-way traffic. The bridge is approximately 13' feet in width. It is opened by energizing an electric motor which pulls an end of the bridge causing the bridge to turn horizontally on a central pviot [sic]. Once the bridge starts to open, it is virtually impossible to stop it because there is no braking mechanism to stop its momentum.
“The simple mechanism that opens and closes the ‘Cambon Bridge’ was housed in a little shack situated near the bridge and on the right descending bank of Bayou Grand Caillou. From the position the bridge tender had to assume to operate the mechanism on the bridge, he could not see outside whether anyone was on the bridge. The shack had one window permitting a view to the left descending bank and it was placed to the center of the shack rather than to the side near the mechanism where the bridge tender could view the end of the bridge.
“Mr. Johnny Duplantis had been the bridge tender for about 19 years on the ‘Cambon Bridge’. He was well known to all in the neighborhood and in his job he was known by all, even his employer to grant certain liberites [sic] to persons on the bridge. He permitted children to ride on the bridge while it was being opened. His employer had requested him not to permit anyone to ride on the bridge when it was being opened or closed. Apparently, Mr. Johnny did not heed the orders given him because he continued to permit children to ride the bridge.
*482 “Mr. Johnny Duplantis and Mr. Donald Tivet both testified that there were no signs near the bridge that warned against anyone getting on the bridge after the gates were lowered. Both agreed that signs should be placed near the approaches to warn people of the danger involved in getting on the bridge when the bridge was to he opened.
“On September 15, 1968, after Lisa had lowered the gate on the opposite side of Bayou Grand Caillou from the bridge tender’s shack, she and her friends ran to the bridge and attempted to get on the span and as she attempted to get on the bridge, she stumbled or slipped and her right foot went in the back of her and her leg became wedged between the bridge and the abuttment [sic] and was severely injured.
“Lisa testified that she had ridden on the bridge before. The Court was impressed with the straightforward answers of this child. Her answers to all questions were spontaneous and obviously truthfully given. She is ... a child of ordinary intelligence and sincere. Lisa was brought up in a family where the father and mother had little education and struggled to earn a living.
“The questions for this Court to answer is [sic] whether the actions of the defendants were negligent and whether this negligence was the proximate cause of the accident and ensuing injuries and damages sustained by the plaintiffs? Then if the actions of defendants were negligent, was Lisa contributorily negligent ?
“This Court finds that the actions of the defendant, Johnny Duplantis, were negligent and his negligence proximately caused the damages and injuries sustained by plaintiffs. Certainly, Johnny Duplantis had a duty to ascertain if anyone was near the bridge, if children were nearby it, it was his duty to ascertain that they would not be in positions of danger before he energized the machinery that opened the bridge.
“It is also the opinion of this Court that the defendant, Terrebonne Parish Police Jury is negligent in having the controls that open and close the bridge positioned such that the bridge tender could not operate the controls and view the approaches to the bridge so as to determine at all times if anyone was on the bridge or near the abuttments [sic] on either end of the bridge.
“Certainly, Johnny Duplantis was aware of Lisa’s and her friends’ presence near the bridge, he should have seen them on the abuttment [sic] prior to his opening the bridge. But Johnny Duplantis did not look toward the opposite side of the Bayou from the shack after he entered same. After he entered the shack, his only concern was to set the machinery in motion to open the bridge and nothing else. It was only after Lisa was injured and undoubtedly it was her screams that alerted him to the fact that she was on the bridge.
“The facts in Savoy v. State Ex Rel. Louisiana Highway Department [La.App.], 244 So.2d 93, 3rd Circuit (1971) are quite similar to those of the instant case. Sidney Savoy, a ten year old boy walked onto a bridge, he stopped on the bridge to watch a turtle. While this boy was watching the turtle the bridge was opened to allow a vessel to pass. The young Savoy was injured when he jumped from the bridge to shore. The Court held:
‘The record reflects that whenever it was necessary to open the bridge, the bridge tender had difficulty with children congregating in the area to watch the bridge opening operations. This situation was compounded in severity during the summer months when all of the children are on vacation. She usually found it necessary at these times to request assistance from the local police in keeping children out of the area during bridge openings. Her husband usually helped her in this surveillance and would remain outside of the bridge tender’s house to be sure that no children or pedestrians were on the bridge prior to the *483 opening. On the date of the accident in question, however, her husband was ill and did not help in this endeavor but rather went into the bridge tender’s house and there remained before and during the operation. In view of the fact that children were in the vicinity and that usually she needed help from the local police and/or her husband to clear the bridge of them, she should have known of the dangers involved and not opened the bridge until she was sure that no one was on it .
‘The span bridge with its attendant operations is a dangerous instrumentality accommodating both vehicles and pedestrians. In view of all the circumstances of this case, Mrs. Dautreuil was negligent, on the occasion at bar, in not ascertaining that the bridge was completely clear of pedestrians and in not leaving the bridge tender’s house and going to a vantage point where every portion of the bridge could be viewed before actually opening the span.’
“Defendant would have this Court to believe that since Lisa jumped upon the bridge after the opening operations had begun and it was impossible to stop the bridge, that Johnny Duplantis should not be held negligent. This Court does not subscribe to this theory. Johnny Duplantis knew there were children in the area, he knew Lisa was still at the gate looking at him when he went into the tender’s shack to energize the opening mechanism. It was his duty to ascertain that no children would attempt to ride the bridge or be so near the bridge as to be injured by the opening of the span.
“Past history indicates that Mr. Johnny Duplantis has been very lax in discharging his duties as a bridge tender. His superiors had advised him not to permit children to ride the bridge. Obviously, he did not heed their orders and in utter disregard of these orders continued to permit children to ride the bridge. Certainly, children of tender years such as Lisa, unless specifically warned of the danger are oblivious of and unaware of the danger involved. The permissiveness of the bridge tender, if anything, lulled the children into a feeling that riding the bridge was not unsafe and per-missable [sic]. For many years, Mr. Du-plantis had permitted riding on the bridge without any incident. Mr. Duplantis with his many years of experience as bridge tender knew or should have known the dangers associated with opening the bridge. He should have exercised caution and taken steps to prevent children from riding the bridge when opened and he should have exercised caution before energizing the mechanism to open the bridge to ascertain that children would not run upon the bridge. This Court concludes that Mr. Johnny Duplantis was negligent, his negligence is the proximate cause of the accident.
“The defendant alleges contributory negligence on the part of Lisa. Although the jurisprudence of this state recognizes that children of Lisa’s age are capable of contributory negligence, this Court feels that the circumstances of this case warrant this Court finding that Lisa was not contributo-rially negligent. The Court in Savoy v. State Ex Rel Louisiana Highway Department, Supra held:
‘ . . . however the test for contributory negligence on the part of a youth is not the same as that of an adult, that is to say, the child’s age, intelligence and experience under the particular circumstances must be considered and they are not expected to react in the same manner as an older or more mature person
“As to the question of damages, this Court feels that Lisa’s injuries, suffering and the disfigurement of this young lady’s ankle will be adequately compensated by an award of $9,000.00. This Court feels that the plaintiff, Anthony Luke, has proven damages that he has sustained in the full sum of $912.77.” (Written Reasons for Judgment, Record, pp. 46-51 — Emphasis by the author)
*484 Defendants argue that the trial judge erroneously relied on the case of Savoy v. State ex rel. Louisiana Highway Department, 244 So.2d 93 (La.App. 3rd Cir. 1971), and that the Savoy case is factually distinguishable and, therefore, not applicable, the main alleged factual distinction being that the plaintiff in the Savoy case was already on the bridge and was attempting to jump to a position of assumed safety, whereas the plaintiff in the instant case jumped onto the bridge in order to ride same while it was in the process of being opened. The trial judge was not impressed with this distinction, as evidenced by that part of the trial judge’s Written Reasons for Judgment following the quoted excerpt, from the Savoy opinion. Our review of the record fails to disclose where the trial judge committed any manifest error in his finding defendants negligent and in absolving plaintiff’s minor daughter of contributory negligence, especially when consideration is given to the totality of the circumstances, including the repeated history of permissiveness on the part of the defendant-bridge tender in allowing small children to ride the bridge while it was being opened, the absence of warning signs prohibiting pedestrians from being on the bridge when it was being opened, the relative position of plaintiff’s minor daughter and the other children who accompanied her and the defendant-bridge tender, and the failure of the defendant-bridge tender to make sure that no children would reasonably attempt to get on the bridge when he commenced to open it.
Defendants were negligent in permitting the children to ride the bridge while it was being opened, considering their superior knowledge and awareness of the attendant dangers. Similarly, a nine-year old minor child such as the plaintiff’s daughter was obviously attracted to the opening bridge and the rides which she and other children in the vicinity were permitted to take while the bridge was being opened, all of which tended to lull a minor child such as Lisa Luke into a false sense of security and safety in proceeding as she did.
Defendants complain that the trial judge erred in assessing general damages for the injuries sustained by the minor at the sum of $9,000, while plaintiff argues that the award is inadequate.
An award of damages made by a trial court will not be disturbed on appeal unless it amounts to a clear abuse of the great discretion vested in the trial court, LSA-C.C. art. 1934(3); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). Our review of the record, and particularly of the medical evidence, fails to disclose any such clear abuse of the trial court’s discretion in assessing general damages, particularly when considering the permanent scarring and disfigurement which this nine-year old girl has sustained and will endure for the duration of her life. The award of general damages is neither excessive nor inadequate and will not be disturbed.
For the foregoing reasons, the judgment appealed from is affirmed, with all costs of this appeal assessed to defendants.
Affirmed.