290 So.2d 353 (1974)
Rose T. ORFANELLO, wife of/and Lucien Orfanello, et al.
v.
PEPSI COLA BOTTLING COMPANY et al.
No. 5986.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1974.
Rehearing Denied March 8, 1974.
Writ Refused April 19, 1974.
*354 Birdsall, Alvarez & Rodriguez, Benjamin J. Birdsall, Jr., New Orleans, for plaintiffs-appellants.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Donald O. Collins, New Orleans, for defendants-appellees.
Before STOULIG and SCHOTT, JJ., and FLEMING, J. Pro Tem.
STOULIG, Judge.
Plaintiffs, Mrs. Rose Orfanello and Mrs. Eloise Todaro, have appealed seeking an increase in the quantum awarded as general damages for their injuries sustained when a Pepsi Cola truck backed into their stopped Volkswagen sedan. Defendants have neither appealed nor answered the appeal, and therefore liability is not at issue.
First, we will consider Mrs. Orfanello's contention that her award of $6,500 was insufficient to compensate her for a serious neck injury leaving her with a 15-percent permanent disability to the body as a whole; a neck injury, esophagitis and a scarred neck that has produced emotional problems. The evidence is uncontradicted that Mrs. Orfanello had suffered severe pain for the 22 months intervening between the accident and the trial, and the prognosis was that she would experience future pain from time to time. We fully concur with plaintiff's argument that the quantum is so inadequate as to constitute an abuse *355 of the discretion vested in the trial judge by LSA-C.C. art. 1934(3).
We relate the following account of Mrs. Orfanello's medical problems that developed immediately after the accident of March 23, 1971. Three days later she saw Dr. James T. Nix, a surgeon, with complaints of neck, back, arm and stomach pains. He treated her conservatively with neck traction, heat and medications, to which she did not respond. On July 16, 1971, he referred her to specialist Dr. Kenneth Vogel for neurological examination. He was one of several other doctors plaintiff consulted for her multiple medical complaints, and as it developed, he treated her most serious, disabling and painful injurya herniated cervical disc.
Before detailing her course of treatment by Dr. Vogel, we comment that the testimony of Dr. Nix as an expert is unconvincing. In the course of his testimony, he stated he had retired from active practice about one year prior thereto because of illness. But his evidence does serve to corroborate the fact that plaintiff sought medical attention immediately after the accident for neck, back and stomach pains.
Dr. Vogel's testimony is set forth in detail because, in our view, it establishes that Mrs. Orfanello experienced almost two years of severe pain from this one of several injuries either caused or reactivated by the accident. After reading it, we have no difficulty concluding the award is patently inadequate.
Dr. Vogel first examined Mrs. Orfanello on July 29, 1971 and found muscle spasm and limitation of motion in the left cervical region. He also noted tenderness in the left brachial plexus. It was his impression from these symptoms plaintiff was experiencing bicipital tendonitis (an injury to a tendon running from the arm through the groove in the shoulder to which it is attached and then to the muscle that brings the arm across the front). On August 19, 1971, he injected the left bicipital tendon with a drug designed to alleviate the condition. On September 9, 1971, she returned to Dr. Vogel with recurring complaints of cervical pain and reported the shoulder had been 90 percent relieved. Again Mrs. Orfanello exhibited limitation of motion and mild paraspinous muscle spasm. Within six months of the initial treatment by Dr. Vogel the shoulder was responding well. However, conservative treatment for the neck, i. e. moist heat applications, analgesics and other medication had no effect. On January 25, 1972, Mrs. Orfanello returned to Dr. Vogel because of an exacerbation of pain in the left bicipital tendon that radiated into the left arm. The limitation of motion and muscle spasm in the cervical region was still present. Dr. Vogel again injected the bicipital tendon.
On May 4, 1972, plaintiff returned to Dr. Vogel. The January treatment had given her no relief and, in addition, her pain intensified in April of 1972. In the May examination, in addition to the cervical muscle spasm and limitation of motion, Dr. Vogel noted she lost some of her ability to grip with her left hand and this was what he termed a "striking neurological deterioration." Suspecting a disc, he instructed her to check into Mercy Hospital for tests. First, on June 22, 1972, a myelogram was performed and this, in itself, is a painful procedure. The dye injected in plaintiff's spinal column did not flow freely at the fourth cervical interspace and X-rays of that area showed a protrusion. Before undertaking surgery, Dr. Vogel ordered a discogram performed on Mrs. Orfanello to confirm the presence of the ruptured disc. This test, performed on the patient while fully conscious, produced excruciating pain. A needle is inserted through the neck directly into the disc to inject dye into each interspace. A separate injection is required for each interspace. While this test was being performed, plaintiff said she thought her screams of anguish were loud enough to be heard throughout the hospital. Dr. Vogel's more subdued description of the pain experienced by the patient while a discogram is being performed indicates it is severe almost beyond endurance.
*356 In any event, the tests showed a bilateral rupture of the disc and the pathology was in the C4-5 interspace.
On June 26, 1972, plaintiff underwent an anterior cervical fusion. This entails making a 3-centimeter incision in the neck at the front, cutting out the affected disc and any osteophytes and extruded material in front of the spinal cord, unpinching the compressed nerve root and then hammering a bone cut from the pelvis into the opening created by the incising of the disc. Hopefully, this will cause a stable fusion in the area. The bone from the pelvis is obtained with an instrument that looks like a small cookie cutter and it cuts a round dowel or plug from the pelvic bone. Dr. Vogel next examined plaintiff on September 26, 1972, noting she still had mild limitation of motion in the cervical region with minimal paraspinous muscle spasm. He thought she was progressing satisfactorily and encouraged her to continue her conservative treatment. He said her muscle spasm and the radiation of pain in her arm could continue for a year.
Dr. Vogel rates her permanent disability at between 10- and 15-percent disability to the body as a whole. Part of this rating is based on the fact that she will experience pain into the indefinite future from time to time.
As a result of the neck surgery and myelogram, Mrs. Orfanello suffered two side effects. The injection of dye in the spinal column produced a mild degree of coccyxdemia (pain in the tailbone). Dr. Vogel explained this is caused by a residue of dye that cannot be removed after the test and is usually temporary in nature. The second is a 3-centimeter scar on the front of the neck, which has become an acute problem to plaintiff. Mrs. Orfanello, 29 years old, is self-conscious about the scar, and as a rule, wears a scarf around her neck to conceal it. Whether the scar is in itself disfiguring or whether its detracting features have been magnified in plaintiff's mind, it is in either case an injury that has produced mental anguish and is hence compensable. Dr. Vogel positively stated the injuries he treated were caused by her accident of March 23, 1971. Although Mrs. Orfanello had been involved in two previous accidents in which she hurt her neck, Dr. Vogel had no difficulty relating the disc and bicipital tendonitis to the accident under discussion now. He pointed out the other two had occurred five and six years prior to this one, and plaintiff had not consulted a doctor for treatment for many years before this accident occurred.
In addition, plaintiff complained of back pain. The record in this respect indicates she suffered some discomfort to her back. According to the notes from which Dr. Nix testified, she had complaints of back pain some six weeks after the accident. Because of the state of the Nix deposition, although we believe plaintiff's statement to the effect she was injured in the lumbar region, that portion of the general damages we assess for this complaint will not be significant because the evidence does not develop the extent of pain and suffering Mrs. Orfanello experienced as a result thereof.
Finally we note Mrs. Orfanello was under treatment at the time of the trial for esophagitis (a burning sensation in the esophagus caused by backup of stomach acid). This condition is caused by stress and tension, according to Dr. Mary Ellen Black, a family specialist who had been treating plaintiff since September 14, 1972. On her initial examination she noted Mrs. Orfanello looked run-down and had lost a considerable amount of weight. Mrs. Orfanello testified she had been nervous and tense since the accident occurred. The weight loss attested to by Dr. Black substantiates plaintiff's testimony that she was highly nervous after the accident. (Her mother, Mrs. Todaro, estimates she lost 20 pounds.) Thus the esophagitis is probably the result of tension undergone by Mrs. Orfanello since her accident.
A final factor we have taken into consideration in assessing general damages is the disruptive effect these injuries have had on plaintiff's family life. She and her *357 husband both testified she can no longer engage in social activities they previously shared, e. g. dancing, fishing, playing ball with the children, etc. Her ability to do housework is also limited. We fix her general damages at $25,000.
In increasing Mrs. Orfanello's award, we are mindful of the Supreme Court's directive to the courts of appeal outlined in Gaspard v. LeMaire, 245 La. 239, 158 So. 2d 149 (1963), and often restated in subsequent decisions. Other appellate decisions to which we have referred solely for the purpose of determining whether the trial judge has abused the "much discretion" rule include Eckel v. C. T. Patterson Company, Inc., 279 So.2d 210 (La.App. 4th Cir. 1973); Stablier v. Partin, 278 So.2d 537 (La.App. 1st Cir. 1973); Deville v. United States Fidelity & Guaranty Co., 258 So.2d 694 (La.App. 3d Cir. 1972); Viator v. Gilbert, 206 So.2d 106 (La.App. 4th Cir. 1968), and cases cited therein. While these do not deal with awards for the exact injuries suffered by Mrs. Orfanello, we think the plaintiffs therein experienced pain and suffering comparable to that of plaintiff. General damages are in the area of $25,000 in these cases. In passing, we note defendants have cited no cases in their brief in support of their position that an award of $6,500 was reasonable and adequate for similar injuries, attendant pain and suffering.
We next consider the award of Mrs. Eloise Todaro. In our view the $2,000 assessed is conservative. She first saw Dr. Nix on March 26, who candidly admitted he had no independent recollection of his treatment of Mrs. Todaro and testifying from records made at the time of this examination, stated that she had suffered a cervical sprain with a history of traumatic onset and a recurrent lumbar sprain, both of which he related to the accident. In the following four or five months conservative heat treatment, traction, and muscle relaxants were administered some 18 to 20 times, until her discharge on July 16, 1971 with a 20-percent disability.
Dr. Jack Wickstrom, an orthopedist to whom she had been referred, examined Mrs. Todaro on August 26, 1971 and found that she sustained a sprain of the cervical spine, contusions of the greater trochanter, and a sprain of an arthritic lumbosacral joint, all of which findings he causally related to the accident of March 23, 1971. This plaintiff sought no medical treatment other than that given by Dr. Nix, and for the reasons previously stated, his testimony was not persuasive.
Although we would fix the general damages at a higher figure if it devolved on us to assess them, we cannot conclude the trial court abused its discretion in setting this amount. Under Gaspard and its progeny we, as an appellate tribunal, cannot raise quantum under these circumstances.
For the reasons assigned, the judgment appealed from is amended to increase the award of general damages to Mrs. Rose T. Orfanello from $6,500 to $25,000; in all other respects the judgment is affirmed. Defendants are to pay the cost of this appeal.
Amended and affirmed.