301 So.2d 406 (1974)
Leslie R. CARROLL
v.
AETNA CASUALTY & SURETY COMPANY et al.
STEVENS ORNAMENTAL IRON WORKS et al.
v.
AETNA CASUALTY & SURETY COMPANY et al.
Nos. 12399, 12400.
Court of Appeal of Louisiana, Second Circuit.
October 1, 1974.
*407 Donald R. Miller, Shreveport, for Stevens Ornamental Iron Works and Leslie R. Carroll.
Cook, Clark, Egan, Yancey & King by Herschel E. Richard, Jr., Shreveport, for Aetna Casualty & Surety Co.
Lunn, Irion, Switzer, Johnson & Salley by Harry A. Johnson, Jr., Shreveport, for State Farm Fire & Casualty Co., and L. W. Bounds.
Before AYRES, PRICE and HALL, JJ.
HALL, Judge.
These suits arise out of a boating accident which occurred on Cross Lake in Caddo Parish on the night of July 13, 1972, when a boat being operated by Ralph P. Brown with plaintiff, Leslie R. Carroll as a passenger, ran under and through a duck blind. Brown was killed and Carroll received serious injuries.
Carroll brought suit against Aetna Casualty & Surety Company, liability insurer of Brown, and against State Farm Fire & Casualty Company, liability insurer of the owner of the boat, seeking recovery of damages for personal injuries and medical expenses sustained by him as a result of the accident. Stevens Ornamental Iron Works, Inc. and Carroll, designated as an alternative plaintiff, brought a separate suit against the two insurance companies for loss of profits allegedly sustained by the corporation by reason of Carroll's disability, Carroll being a principal stockholder and employee of the corporation.
Defendants answered generally denying liability and, alternatively, pleading Carroll's assumption of risk and contributory negligence in bar of recovery by him and denying the right of the corporation to recover for any losses sustained by it.
After trial, in written reasons for judgment, the district court found the accident was caused by the negligence of Brown and rejected the defenses of assumption of risk and contributory negligence. Plaintiff Carroll was awarded the sum of $17,500. The demands of the plaintiff corporation were rejected. Defendants appealed from the judgment rendered in favor of Carroll. In the other suit, plaintiffs Carroll and Stevens Ornamental Iron Works appealed from the judgment rendered in favor of defendants.
On appeal defendants concede the negligence of Brown, the operator of the boat. The principal contention urged by defendants on appeal is that plaintiff Carroll is barred from recovering by reason of assumption of risk or contributory negligence. Defendants also contend the amount of the award is excessive.
The defenses of assumption of risk and contributory negligence are based primarily on contentions that Brown was under the influence of alcoholic beverages at the time of the accident, that Carroll knew or should have known of his condition and is barred from recovery by voluntarily riding with him in such condition, and that Carroll assumed the risk of injury by riding with Brown across the lake at high speed on a dark night with knowledge of duck blinds in the area.
Carroll and Brown, who were co-owners of Stevens Ornamental Iron Works and *408 good social friends, set out to go catfishing on Cross Lake on the afternoon of July 13, 1972. Brown was seen by several people during the afternoon and did not appear to have been drinking. On the way to the lake they stopped at a food store and bought some snacks and some beer, probably a six-pack.
They launched the boat, which was a fourteen foot fishing boat with a twenty-five horsepower motor, at a public landing about 5:30 p. m.
Brown, who was an experienced fisherman and fishing boat operator, operated the boat from the front seat where the controls were located. Carroll was seated in the rear seat of the boat.
According to Carroll they fished until about 9:30 that night during which time Carroll drank approximately two beers and Brown drank one and maybe opened a second. Believing they needed to be off the lake by 10:00 they started in to the landing. They slowed down or stopped one time to light cigarettes and then started back up. Carroll did not know how fast they were going when they started up after lighting the cigarettes, but thought the motor was wide open. The next thing Carroll remembered he came to after being unconscious, with the motor stopped and the boat adrift. Carroll was injured and bleeding and Brown was unconscious and fatally injured. Carroll was unable to start the motor and paddled to the shore where he received assistance. He did not know what had happened but thought at the time they had probably been hit by another boat. Investigating lake patrolmen determined the boat had hit and passed under a duck blind out in the lake.
A blood test taken from Brown's body later that night revealed an alcoholic content of .10%. Two employees of the Northwest Louisiana Criminalistics Laboratory, where the blood sample was tested, testified the alcoholic content indicated the presence of 4.8 cans of beer in the bloodstream. Ray Herd, director of the crime lab, expressed the opinion that an alcoholic content of .10% in a person's blood would affect his ability to operate a boat properly and would cause changes in the person's manner noticeable to others.
We are in full agreement with the trial court's finding that defendants failed to prove by a preponderance of the evidence that Brown was intoxicated or that Carroll was aware of such intoxication. The technical and expert evidence is not sufficient to overcome the testimony of the several people who saw Brown shortly before the fishing trip and of Carroll that they observed nothing about the appearance or actions of Brown to indicate he was under the influence of alcohol. Carroll testified he was not watching Brown constantly in the boat and it is quite possible he drank more than the one or two beers Carroll saw him open. Common knowledge and experience tells us that many grown men can consume several beers during the course of four hours fishing without showing visible effects of drinking and without their ability to handle a boat being significantly affected. The evidence in this case does not justify a finding either that Brown's ability to operate the boat was, in fact, significantly impaired or that Carroll had any reason to know or believe of any such impairment. The contention that Carroll was contributorily negligent in riding with Brown with knowledge of his intoxicated condition is not well-founded.
The contention that Carroll assumed the risk of injury by riding with Brown on the lake on a dark night without headlights at high speed is likewise not well-founded. A participant in a fishing trip or other sporting activity assumes the ordinary and normal hazards incidental to the sport, but does not assume the risk of negligence on the part of a fellow participant.
In Hawayek v. Simmons, 91 So.2d 49 (La.App.Orl.1956), where recovery was granted to a fisherman hooked in the cheek *409 by his fishing partner while casting, the court held:
"No one will deny that a participant in almost any game or sport can be said, in legal contemplation, that by the fact of his participation therein he assumes all risks incidental to the particular game or sport which are obvious and foreseeable.
"* * *
"However, we do not believe that it may be said that plaintiff assumed the risk of such an accident as he sustained, the happening of which, under the doctrine of res ipsa loquitur, makes it legally certain that there was fault or negligence on the part of his companion on the fishing trip. Hawayek and Simmons were the only occupants of the boat and there is no valid reason why the plaintiff should have been expected to foresee that Simmons in casting out his line would throw it horizontally and sideways and into the boat so that the lure would cause injury to him. There is no merit in the defense that there was an assumption of the risk on plaintiff's part or that the asserted risk was incidental to the sport of fishing, obvious and necessary.
"* * *
"... While one who becomes part of a fishing venture might be said to assume all ordinary and normal hazards incident to the sport, the law does not require him to assume all risks of negligence of those other persons in the fishing party."
In the instant case, the negligence of Brown is conceded. Plaintiff did not assume the risk of injury caused by Brown's negligent operation of the boat, nor was plaintiff contributorily negligent in failing to protest the manner of operation of the boat or in failing to observe the danger that arose. As a passenger in the back seat of the boat, Carroll had no control over the operation of the boat, was not in a position to see ahead or even communicate with Brown while the boat was in operation. It does not appear that any significant time elapsed from the time they stopped the boat to light cigarettes until the accident happened. No great speed was proved, although Carroll did say it appeared Brown started the boat up wide open.
A guest in a boat, like a guest passenger in an automobile, is not obliged to look out for sudden or unexpected dangers. He has a right to place reliance upon the operator to discharge that obligation and is not required to monitor the operation or pay attention to the path ahead or the presence of obstructions or other boats. See Beavers v. Butler, 188 So.2d 725 (La.App.2d Cir. 1966) writ refused 249 La. 739, 190 So.2d 242.
Turning to the quantum issue, Carroll received severe lacerations of the face, requiring 150 to 200 stitches. Although he was confined to the hospital for only a few days, his facial injuries were painful and he had headaches and neck pain for some time after the accident. He has an embarrassingly disfiguring scar several inches in length extending from his mouth across his face and chin, requiring plastic surgery which will probably have to be done in two operations. He has a slight paralysis and numbness at the corner of his mouth which affects his appearance and ability to eat and drink normally. Past and future medical expenses of almost $2,000 were proven. The trial court awarded a total sum of $17,500 which we find to be well within that court's much discretion.
The district court was correct in denying the claims of the corporation and of Carroll for loss of profits of the corporation. First, it was not established to any degree of certainty that the corporation lost any profits due to Carroll's injuries. Secondly, no authority is cited nor do we know of any for allowing a corporation recovery for loss of profits due to an injury to one of its employees caused by the negligence of a third party arising out of a *410 nonbusiness related activity. Third, it was shown that Carroll continued to receive his usual salary and, as stated above, it was not proved that he personally suffered any financial loss due to the accident.
On appeal, Carroll contends the trial court was in error in not applying admiralty and maritime law to this case and in excluding evidence as to the navigability of Cross Lake. While this issue might have had importance in the event of a finding of some negligence on the part of Carroll, he concedes that aspect is moot in view of the finding he was not negligent. Carroll argues admiralty law should be applied because the awards are generally higher in admiralty cases, but this argument is without merit because admiralty law does not establish any standards for awards different from those applied under state law. The admiralty issue is immaterial to a decision of this appeal and is not considered.
For the reasons assigned, the judgments of the district court are affirmed. The costs of appeal are assessed to the appellants in each case.
Affirmed.