BEER, Judge.
Plaintiff-appellee, Larry Williams, Sr., instituted suit in behalf of his minor daughter, Cathy Williams, seeking to recover damages for injuries she sustained as a result of the alleged negligence of Kerri Harvey, daughter of Jack V. Harvey, defendant-appellant. From a judgment awarding damages in the amount of $31,-080.50 defendant-appellant appeals.
On July 19, 1974 teenagers Cathy Williams, Kerri Harvey and Leslie Cox were en route to a dance in Lutcher, Louisiana. Kerri was driving her father’s 1973 Mazda automobile. As they approached the intersection of Louisiana 53 (on which they were proceeding) and Airline Highway, Kerri drove across the railroad tracks that parallel Airline Highway “faster than normal.” Although she saw a vehicle directly ahead of them proceeding in the same direction, Kerri took her eyes off the road at that moment in order to adjust her ring. When she looked up it was too late to prevent the rear end collision that immediately followed.
LIABILITY
On appeal, defendant-appellant does not seriously challenge the jury’s finding of Kerri’s negligence, nor is there any evidence in the record sufficient to rebut the presumption of negligence which clearly results from these undisputed facts. Rodrigues v. Trebitz, 304 So.2d 396 (La.App. 1st Cir. 1974). Appellant does, however, strenuously urge that Cathy Williams was contributorily negligent and assumed the risk of driving with an incompetent driver. In support of the first contention, appellant relies on Cathy’s admission that she failed to use the seat belt and, in support of the second, a claim that Cathy knew or should have known that Kerri was in the habit of driving when under the influence of marijuana or other intoxicants.
An injured guest passenger does not forfeit his right to recover because of his failure to use a seat belt. Lawrence v. Westchester Fire Ins. Co., 213 So.2d 784 (La.App. 2nd Cir. 1968) application denied 252 La. 969, 215 So.2d 131. The record does not support a conclusion that Kerri’s physical functions were obviously and materially impaired by intoxicants at the time of the accident. Dahlquist v. Canal Insurance Co., 212 So.2d 246, (La.App. 3rd Cir. 1968) writs refused 252 La. 951, 215 So.2d 125; Marcotte v. Travelers Ins. Co., 258 La. 989, 249 So.2d 105 (1971). Furthermore, Cathy denies knowledge of any use by Kerri of alcohol or marijuana on the night in question and there is no credible evidence to refute her testimony on this issue. Finally, Cathy testified that when she *904 learned Kerri intended to frighten Leslie Cox by speeding over the railroad tracks, she warned against such a course of action. Thus, she satisfied the duty as a guest passenger “to protest or try to stop the obviously negligent acts of the driver.” Badeaux v. Patterson Truck Lines, Inc., 247 So.2d 875 (La.App. 3d Cir. 1971) writs denied 259 La. 77, 249 So.2d 209; White v. State Farm Mutual Auto. Ins. Co., 222 La. 994, 64 So.2d 245 (1953). We cannot conclude that the jury’s findings with respect tO' these factual issues are unsupported by the evidence or that they are manifestly in error and thus appellant’s contentions with respect to liability must fail.
QUANTUM AND RELATED MATTERS
Cathy’s physical injuries resulting from the accident included flying glass cuts upon her forehead, cheeks, nose, eyelids and knees and a sufficiently hard blow to her head to cause some swelling which eventually subsided without apparent complicar tions. Immediately after the accident she was seen by Dr. Joseph LaNasa. He felt that the lesions on her face were superficial and without need for any sutures. She saw Dr. Robert Albrecht three days after the accident. He found a number of facial abrasions, especially above her right eye, on the bridge of her nose, and on the left side of her upper lip. He noted that healing was “very satisfactory” and found no evidence of infection.
She was then seen by Dr. Herbert B. Christianson who referred her to Dr. J. Michael Kelly, a plastic surgeon.
Cathy first saw Dr. Kelly on August 21, 1974. He observed that there was a scar on her nose approximately one-half to three-fourths inch in length and three-eighths inch wide with a one to two millimeter elevation. He also observed that it did not conform to the normal concavity of the nasal bridge. He observed that a scar on her upper lip obscured the “vermillion border.” It was prominent and extended up into her lip about one-half inch. He noted several minor scar areas on her right cheek which he described as having a cobblestone effect. In the area of the right eyelid he noted a scar about three and one-half centimeters that extended up to her right temple. This apparently created two “folds” in her right eyelid and caused some elevation of the eyelid.
Under a general anesthesia Dr. Kelly performed surgical excision and removal of the scars on Cathy’s lip and nose and, by dermabrasion, the removal of the right cheek scarring. The eyelid scars were also surgically removed. The redness of the plaintiff’s complexion which temporarily existed after the operation was an anticipated postoperative effect of two to three months duration.
Dr. Kelly indicated that dermabrasion can be a fairly painful process. Cathy did experience some pain for which Tylenol III was prescribed during her hospital stay from September 2 through 7, 1974. Dr. Kelly further indicated that the dermabrasion associated pain would, essentially, subside when the scab fell off within three to seven days after the procedure. The pain associated with.the surgical excision would subside on removal of the stitches which took place soon after the operation. He also testified that the pain associated with the original trauma occasioned by the collision would have probably lasted from three days to two weeks. He also observed that Cathy overreacted to postoperative discomfort and pain and testified that she was not as cooperative as she might have been. He felt that additional corrective surgery might be required to narrow the width of the nose and lip scars and further indicated that some evidence of the scarring was permanent in nature; it could be improved, but not completely erased, although makeup would reduce same to negligible proportions.
' On her attorney’s recommendation, Cathy began seeing Dr. Charles R. Smith, a psychiatrist, on October 3, 1974. He found that she was obsessed with her face and *905 physical appearance and that this was causing nervous manifestations such as stomach upset, loss of weight and sleep disturbances. He concluded that Cathy had apparently exhibited essentially normal adolescent behavior prior to the accident, and thus believed that her post-accident depression, which was out of the range of normal behavior, was a direct result of the accident. Basically he felt that the accident had accentuated earlier patterns of nervousness and questioning of self worth which were not originally symptomatic. In other words, the post-accident scarring confirmed and deepened latent fears of worthlessness and not being lovable or attractive to others.
Cathy’s mother had related to the doctor that her daughter’s disposition changed after the accident. She was irritable and prone to just sitting at home and looking at her face in the mirror. She brooded and cried and did not want to attend school. After the accident, she observed her daughter had difficulty in sleeping through the night.
Cathy began seeing Dr. Elizabeth Mc-Dermy in December, 1974. Dr. McDermy noted that Cathy had a mild to moderate case of acne which had apparently preexisted the accident but observed that acne could be aggravated by stress. On her last visit in February 1975, her face had cleared.
LSA-C.C. Article 1934(3) establishes, in pertinent part, that:
“In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury . . ..”
See Molton v. Avrard, 293 So.2d 557 (La. App. 4th Cir. 1974).
The full force and effect of this article’s import was set forth by the Supreme Court in Miller v. Thomas, 258 La. 285, 246 So. 2d 16 (1971) when that court affirmed the jury’s award of $60,000 for the lacerations to the face of a seventeen year old female, reversing this court’s reduction to $25,000. In that case, plaintiff had experienced a curved scar extending from the corner of her mouth to her ear, an eight centimeter scar on the forehead, a three centimeter scar below the right eye, and a two centimeter scar on the right side of the upper lip. Pastic surgery was performed with at least one more surgical intervention indicated. The court declared:
“The pain associated with the injuries, the facial scars, and the psychological efT feet of these scars are all factors to be considered in the award of damages.”
The court therein also restated the rule that prior jurisprudence exerts no absolute control over an award of damages made by the trier of the case and is simply a guide in evaluating whether the trier’s discretion is abused. See Taylor v. Rome, 303 So.2d 844 (La.App. 1st Cir. 1974).
In Knotts v. Employers Casualty Co., 177 So.2d 630 (La.App. 3rd Cir. 1965) plaintiff was a single, twenty-three year old beauty queen and former college student who was thrown violently forward into a windshield when the car in which she was a passenger had a head-on collision with another vehicle. After the accident, she was in the hospital for six days. While in the hospital her four lower teeth, which had been loosened, were removed and her gum was sutured. The four upper teeth, which had been loosened by the blow, were manually forced back into the jawbone. After she was released from the hospital, she began a program of prolonged and painful dental treatment. The lower gum had to be reopened and certain remaining tooth roots and bone fragments removed. The upper teeth eventually died and the nerves from same were removed and the root canals reamed. These four teeth, and one tooth on either side, were ground down to pegs and crowns were applied.
Furthermore, a portion of her lower jawbone, on the inside, was broken off when the teeth were pushed back into the jawbone. The loss of bone and shrinkage *906 of surrounding tissue would necessitate many future changes of the lower bridge and possibly endanger nerves leading to her other lower teeth.
In terms of facial disfigurement it was observed:
“ ‘On the forehead, two scars were present at the junction of the forehead with the hairline on the left side, one an oval area, approximately three quarters of an inch in diameter, which appeared to be a healed abrasion, and the other was a vertically running scar, measuring approximately one inch by one sixteenth of an inch wide, with some elevation of the skin on the inner aspect of the scar, . Next on the eyebrow, three linear inconspicuous areas were present near the inner end of the left eyebrow, the entire area involved measured approximately one half inch by a quarter of an inch. These, as did the one on the forehead, appear [ed] to be something in the nature of a healed abrasion or brush burn. On the nose was a vertical scar, measuring approximately a half an inch in length, which was quite inconspicuous. [0]n the right cheek was a slightly depressed obliquely running scar, measuring one half inch by a sixteenth of an inch in width. On the left cheek was an obliquely running very faint linear scar, one inch in length. . [I]n the center of the upper lip, midway between the nose and the free margin of the lip, was an oval pale scar, measuring an eighth of an inch by three sixteenths of an inch. At each corner of the mouth was an obliquely running scar coursing downward and outward from the corner, measuring a half an inch in length by a sixteenth of an inch in width. There was a very slight depression at the outer portion of each scar. ... . [0]n the lower lip, an elevated zone of the free margin of the lower lip was present, slightly to the left of the center line[.] [T]his was due, againf,] to a puckering effect of an inch scar beginning on the outside and curving to the inside of the mouth, throwing the free margin of the lip in a fold. On the skin of the lower lip near the center, was a slightly elevated scar, measuring one eighth of an inch by three eighths of an inch. On the left shoulder, at the junction of the shoulder and the upper arm, was a vertically running scar, slightly depressed, measuring three quarters of an inch by an eighth of an inch wide. On the left leg, just below the left knee, was an obliquely running scar, measuring one and a half inches in length by one quarter inch in width, at this time the scar was flat and red, and there were several prominent stitch marks still present.’ ”
Plastic surgery was recommended for the longest scar on the forehead, the obliquely running scar on the right cheek, all scars about the mouth and lip, and the scars on the left shoulder and leg. The treating physician admitted, however, surgery might not help scars on the lower lip'.
The Court of Appeal, after reviewing the evidence, affirmed the jury’s award of $10,000 for special damages and $45,000 for general damages.
In Freeman v. Wilcox, 303 So.2d 840 (La.App. 1st Cir. 1974) writ denied La., 307 So2d 630, plaintiff was a twelve year old boy who received lacerations to the right upper eyelid, right lip and right nostril which produced scarring as well as abrasions to the left hand and right knee. He also had three teeth removed. An award of $9,000 was affirmed.
In Ermis v. Government Employees Insurance Company, 305 So.2d 620 (La.App. 4th Cir. 1974) a $4,500 award was granted for scarring to the upper lip and back of a six year old girl. In Carroll v. Aetna Casualty Insurance Company, 301 So.2d 406 (La. App. 2nd Cir. 1974) an award of $17,500 was sustained for lacerations requiring 150 to 200 stitches. Scars several inches in length extending from plaintiff’s mouth across her face and chin existed and required at least two operations to correct. *907 There was numbness at the corner of the mouth affecting ability to eat and drink. In Orfanello v. Pepsi Cola Bottling Co., 290 So.2d 353 (La.App. 4th Cir. 1974) application denied, 293 So.2d 178, plaintiff had a three centimeter scar on her neck resulting from corrective surgery due to other injuries. This court increased the $6,000 award to $25,000 and stated:
“Whether the scar is in itself disfiguring or whether its detracting features have been magnified in the plaintiff’s mind, it is in either case an injury that has produced mental anguish and is hence compensable.”
The plaintiff therein had been nervous and tense since the accident had occurred, had lost weight, and had developed esopha-gitis, a burning sensation in the esophagus. In Funderburk v. Millers Mutual Fire Ins. Co. of Texas, 228 So.2d 169 (La.App. 3rd Cir. 1969) writs refused, 255 La. 158, 229 So.2d 735, 736, a young girl received a total award of $1,000 for a hairline scar measuring two inches, a chin scar on the right side measuring eight-tenths of an inch, and a scar under her chin measuring one inch long. The trial court observed that the only scar that was noteworthy was the one inch scar under the chin. In Deville v. Employers’ Liability Assur. Corp., 232 So.2d 827 (La.App. 2nd Cir. 1970) the trial court’s award of $2,900 was increased to $4,790 for permanent facial scars, not susceptible to improvement by plastic surgery, sustained by a fifteen year old girl. Her lip was severely cut and there was a deep laceration on her cheek. Two of her teeth were broken. In Guidry v. Lockard, 215 So.2d 549 (La.App. 1st Cir. 1968) a young married woman received $2,500 for pain and suffering and disfigurement caused by multiple scars resulting from lacerations on her face and leg. The facial scars that were of significance were a two and one-half centimeter long scar extending from her hairline to her eyebrow and another facial scar two centimeters in length on her face. In Marks v. Fereday, 230 So.2d 290 (La. App. 4th Cir. 1970) plaintiff was a twenty-seven year old married woman who sustained lacerations on her chin and lower lip and complained of neck pains and headaches. She had a scar on the lower lip and chin area that was two centimeters long. It was visible but was not particularly disfiguring. She received $1,500 for pain and suffering and $1,500 for the residual scarring. In Galmiche v. Smith, 269 So.2d 490 (La.App. 4th Cir. 1972) writ refused 263 La. 995, 270 So.2d 126, plaintiff’s father sued for injuries sustained by his minor daughter. $7,500 was awarded for pain and suffering due to a closed fracture of the left pubic bone, possible fracture of the sacrum and back strain. $1,500 was awarded for a five centimeter long scar above the right eyebrow. In Fontana v. State Farm Mutual Automobile Ins. Co., 173 So. 2d 284 (La.App. 3rd Cir. 1965) writ denied, 247 La. 1027, 175 So.2d 644, plaintiff was a twenty year old female divorcee. She sustained a bruise to her right eye and cheekbone with lacerations under the eye requiring sutures which left a scar as permanent residual. $3,000 was awarded for the initial pain and suffering and facial injuries and residual headaches and the one-half inch scar over the eye. In Little v. Safeguard, 137 So.2d 415 (La.App. 3rd Cir. 1962) a twelve year old girl, received $3,250 for slight asymmetry of the left nasal passage noticeable only from certain angles. In Scott v. Lumbermens Mutual Cas. Co., 134 So.2d 553 (La.App. 3rd Cir. 1961) plaintiff was an eight year old girl who received $3,500 judgment. She had four permanent scars: a one and three-quarter inches vertical scar on the forehead above the medial right eyebrow; a three-sixteenth inch vertical scar on the right side of the forehead above her right eyebrow ; a one-half inch scar below the right side of her lower lip; a one and one-eighth inch scar on the left side of the scalp. In Hoffpauir v. Southern Farm Bureau Cas. Co., 124 So.2d 409 (La.App 3rd Cir. 1960) plaintiff, a young girl, received $3,500 for a depressed fracture of the nasal bones with displacement of fragments and with swelling of the soft tissues of the nose. There *908 was some permanent disfigurement postop-eratively and she missed seventeen days of school. In Luke v. Police Jury of Parish of Terrebonne, 257 So.2d 480 (La.App. 1st Cir. 1972) plaintiff was a nine year old female who received $9,000 for permanent scarring and disfigurement to her ankle and leg. In Carr v. Fidelity & Casualty Co. of N. Y., 248 So.2d 917 (La.App. 3rd Cir. 1971) plaintiff was a sixteen year old female. The trial court award of $30,000 was reduced on appeal to $18,500. Three of her front lower teeth were traumatically excised and a fourth was later removed by dental process. She sustained lacerations of her mouth and bruises to her face, chest, trunk, and legs. She experienced a fractured mandible in the area of the missing teeth. She sustained myofascial ligamen-tous strain or sprain of the neck causing muscle spasm and pain complaints. She developed traumatic pleurisy. She had crying spells and was depressed. She could eat only baby foods for six to seven weeks. She had a three-by-one milliliter pigmented scar on her lower lip. Two temporary bridges (for her teeth) and two permanent bridges were applied before a third permanent bridge was finally acceptable but the doctors felt that this third bridge still left something to be desired. The Court observed that she suffered an unusual amount of pain and embarrassment from the dental treatment, and that before the accident she had promise as a singer which was adversely affected by the loss of her front teeth. In Brown v. Hawkins, 244 So.2d 896 (La. App. 1st Cir. 1971) writs refused, 258 La. 572, 247 So.2d 393, a male plaintiff sustained what the court described as very serious lacerations to the forehead resulting in permanent scarring. He received $1,500. In Wicker v. U. S. Fidelity & Guaranty Ins. Co., 211 So.2d 420 (La.App. 1st Cir. 1968) plaintiff’s minor son received $10,000 for permanent scars. He had very severe lacerations of the nose and upper lip. Seventy stitches were required. The initial misalignment was so bad that the doctor was able to flop one half of plaintiff’s nose up over the other eye. Extensive plastic surgery was required. In Talley v. Employers Mutual Liability Ins. Co., 181 So.2d 784 (La. App. 4th Cir. 1965) a male plaintiff received $10,000. He had a fracture of his right tibia and fiblia of the right leg that left his right leg three-eighths inch shorter than- his left. There was a fracture of his jawbone and lacerations of his mouth, face and scalp. In Castrinos v. City of New Orleans, 172 So.2d 357 (La.App. 4th Cir. 1965) application not considered 247 La. 680, 173 So.2d 542, plaintiff received a total award of $8,371.02. $5,500 was awarded for pain and suffering, mental anguish and permanent scars and disfigurement. There was severe laceration óf the forehead, eyelid, and nose which hemorrhaged and required several blood transfusions. Permanent facial scars required plastic surgery. In Faslund v. Kendrick, 169 So.2d 276 (La. App. 1st Cir. 1964) plaintiff was a married woman who received $20,000 for physical and mental injuries. She experienced deep lacerations to her right forehead, eyebrow and scalp. She sustained a fracture of her right arm resulting in thirty-five to forty percent permanent disability. She experienced severe mental anguish and became withdrawn from her family and no longer participated in community affairs. Dr. Charles R. Smith, the same psychiatrist who testified for plaintiff-appellee in these proceedings, found she was completely preoccupied with the circumstances of the accident and that preexisting anxieties were greatly aggravated.
The foregoing resume of several recent awards involving injuries somewhat similar to those experienced by Cathy Williams lead to the inescapable conclusion that cases involving scarring and the attendant psychological and physical implications thereof vary through a wide range. Yet, we are constrained to observe that the amount of the award in this case seems to us to be disproportionate to the injuries occasioned notwithstanding the temporary psychological complications that resulted therefrom.
*909 The record is replete with irrelevant and immaterial personal innuendos of all sorts which have no place in these proceedings. They only highlight the antagonism that was obviously precipitated by this litigation. What is also apparent from the record as a whole is the unfortunate fact that an unwitting teenaged girl who experienced moderate injuries which are now largely resolved has been embittered more by this law suit and its unhappy aspects than by the actual injuries resulting from the accident. We perceive that the' acrimonious relationship which existed 'between the parties to this litigation but which bore no actual relationship to the extent or seriousness of Cathy’s injuries may be one explanation for the manifestly erroneous quantum verdict. We further conclude that some additional explanation for same is available when we consider the manner in which the jury was obliged to respond to the interrogatories propounded to it.
At the conclusion of the trial, the jury was allowed to retire for its deliberations with a page of plaintiff’s original petition for damages which contained this itemized allegation:
1) Past, present and future medical expenses $ 5,500
2) Past, present and future pain and suffering 45,000
3) Past, present and future mental anguish, psychological damage, psychiatric damage, disfigurement and scarring 25,000
4) Past, present and future lost wages and/or loss of school time as a result of her injuries 5,000
The jury was then apparently instructed to award damages by filling in four blank spaces on a piece of note paper marked (1), (2), (3) and (4) which obviously corresponded exactly to the itemized damages noted above. We believe that this procedure of requiring the jury to “fill in the blanks” with respect to several different but very much related items of alleged damages acted as an unintentional but nevertheless significant signal to them that they were obliged to render separate and distinct awards for each itemization — and were to respond in a cumulative manner to each and every aspect of plaintiff’s claim in particularized response to the individual itemi-zations of alleged damages which were set forth in plaintiff’s original petition.
There is' nothing before us to indicate why this unusual procedure was followed but we have little doubt that it caused the jury to feel obliged to specifically respond, as in fact they did*, in dollar amounts, to each separate and particularized item of alleged damages.
We do not conclude that the procedure described above requires reversal or remand but we do determine that it was partially causative of the ultimately unacceptable amount of the verdict.
In our considered view, the award is more than double that which is warranted by the record.
It is apparent from the record that, at the time of trial, Cathy had materially improved from the condition that existed when the photographs which are in evidence were taken. It is also clear from all the evidence that the redness of certain area of her face which is apparent in those .photographs was of limited duration and, most important, it is also apparent from the record that the scarring has been materially diminished as a result of the successful excisions and dermabrasion performed by Dr. Kelly.
It is quite true that Cathy experienced some pain following the accident for a per *910 iod of perhaps two to three weeks (though one doctor thinks that about three days may have been the extent of it) and some moderate pain during the five days that she was in the hospital for the work performed by Dr. Kelly. It is also apparent that she was not ever obliged to suffer severe pain, describing it, herself, as a sort of stinging sensation of limited duration. The moderate pain which was experienced for two very limited time periods (one time under conditions where it was controlled by mild pain relievers) can not be the basis for a large award of damages.
The jury felt that Cathy’s mental anguish, psychological damage, psychiatric damage, disfigurement and scarring required an award of $10,000 and though we believe this to be high under the circumstances we cannot say that it constitutes manifest error. The same might also be said of the award of $1,000 for the very limited amount of time she was absent from school. But an award of $20,000 for pain and suffering is an error so manifest and so disproportionate and inconsistent with the record as to require our intervention. Even so, we are inclined to exercise great restraint in our review of the award in order to be sure as we can that our reaction is tempered to the greatest possible extent.
We conclude that the overall total amount of the award must be reduced to $13,080.50.
EXPERT WITNESSES’ FEES
We acknowledge, perforce, that the fixing of expert fees lies within the sound discretion of the trial court and should not be disturbed unless clearly erroneous. Orleans Parish School Board v. Bond, 200 So.2d 411 (La.App. 4th Cir. 1967) and Borenstein v. Joseph Fein Caterers, Inc., 255 So.2d 800 (La.App. 4th Cir. 1971). Thus, if certain fees appear to be “somewhat high” but not an abuse of discretion, they will not be disturbed by us. However, in this case we are constrained to observe that the trial court has abused its discretion by improperly basing its computation of expert witnesses’ fees on irrelevant factors including, among other things, “the loss of income suffered by each physician as a result of court testimony.”
None of the physicians involved in this fairly uncomplicated and reasonably short trial were obliged to be present in court for anything more than a reasonable minimum of time. Indeed, their testimony in most instances is quite brief, and in no instance is extensive or complicated to any unusual degree. For this reason we are at a complete loss to comprehend the basis upon which awards were made to Dr. Charles R. Smith in the amount of $2,500, Dr. Elizabeth McDermy in the amount of $750, Dr. Herbert B. Christian-son in the amount of $1,500, Dr. J. Michael Kelly in the amount of $2,500. Additionally, the lesser awards to Dr. R. C. Albrecht in the amount of $200 and Dr. Gerald LaNasa in the amount of $300 are clearly in the category of “somewhat high,” but not an obvious abuse. The awards to all of the physicians above noted with the exception of Doctors LaNasa and Albrecht will necessarily have to be reduced to $300 each which, as a matter of fact, is still somewhat high in our view but since we are not upsetting the awards to Doctors Albrecht and LaNasa because of the rule generally set forth in Borenstein, supra, we will not set the awards to the other physicians at a lower figure. No expert fee is due the deputy sheriff whose testimony dealt with his investigation of the accident in his official capacity notwithstanding the fact that he ventured several opinions as to speed, braking action, etc.
CONCLUSION AND DECREE
For all of the foregoing reasons the judgment of the Twenty-Ninth Judicial District Court, Parish of St. John the Baptist must be amended and recast so as to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Larry Williams, Sr., as administrator of *911 the estate of his minor daughter Cathy Williams, and against Jack V. Harvey in the full sum of $13,000.00, plus legal interest from date of judicial demand and all costs;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Larry Williams, Sr., individually, and against Jack V. Harvey in the full sum of $80.50;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that expert witness fees be fixed as follows:
Dr. Charles R. Smith $300.00
Dr. Elizabeth McDermy 300.00
Dr. Herbert Christianson 300.00
Dr. J. Michael Kelly 300.00
Dr. Robert C. Albrecht 200.00
Dr. Gerald LaNasa 300.00
and that such be taxed as costs.
As amended and recast, the judgment is affirmed.

AMENDED, RECAST AND AFFIRMED.

 Submitted to the jury was simply a piece of note paper with a list of blank spaces numbered (1) (2) (3) (4) to which the jury responded: (1) $80.50, (2) 20,000, (3) 10,-000 (4) 1,000. The response to (1) was based upon the fact that the medical expenses were paid prior to trial by agreement between counsel. $80.50 is the jury’s computation of interest due on the amount paid as of the date of payment.